United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 13, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————————

No. 04-10729

———————————————

GLORIA AUDINO,

                                        Plaintiff-Appellant,

versus

RAYTHEON COMPANY SHORT TERM DISABILITY
PLAN; RAYTHEON COMPANY LONG TERM DISABILITY
PLAN; METROPOLITAN LIFE INSURANCE COMPANY;
RAYTHEON COMPANY, ad plan administrator,

                                        Defendants-Appellees.

—————————————————————————————————————

Appeal from the United States District Court for
the Northern District of Texas
(USDC No. 3:03-CV-777)

—————————————————————————————————————

Before REAVLEY, JOLLY and PRADO, Circuit Judges.

PER CURIAM:[*]

     Gloria Audino appeals from MetLife's denial of her claim for disability

_____

     [*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion
should not be published and is not precedent except under the limited circumstances
set forth in 5TH CIR. R. 47.5.4.

benefits and the district court's grant of summary judgment in MetLife's favor. Concluding that MetLife abused its discretion in evaluating Audino's claim, we vacate and remand.

Background. Audino worked for Raytheon Company for 17 years, most recently as a Software Engineer Administrative Assistant. She participated in Raytheon's Short Term Disability ("STD") and Long Term Disability ("LTD") benefits plans, paying monthly premiums for enhanced benefits. In 1999, Audino was diagnosed with rheumatoid arthritis, an auto-immune disorder which causes inflammation and swelling in the joints. In May 2001, she was diagnosed with optic neuritis, which caused a partial loss of vision in her right eye. On July 9, 2002, she filed a claim for STD benefits and a claim for LTD benefits. MetLife denied Audino's benefits requests.

Standard of Review. We review a district court's grant of summary judgment de novo, applying the same standards as the district court. *Pratt v. City of Houston*, 247 F.3d 601, 605-06 (5th Cir. 2001). Because the STD and LTD plans give MetLife discretion to determine benefits eligibility, we review Met Life's decision to deny Audino benefits for abuse of discretion. *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 597-98 (5th Cir. 1994). To determine whether the administrator abused its discretion, we analyze whether it acted arbitrarily or

2

capriciously. *Id*. at 601. A decision is arbitrary if there is no rational connection between the known facts and the decision or between the found facts and the evidence. *Dowden v. Blue Cross & Blue Shield of Tex., Inc.*, 126 F.3d 641, 644 (5th Cir. 1997) (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 828 (5th Cir. 1996)).

Analysis. MetLife denied benefits based on a purported lack of objective medical evidence that Audino suffered from a condition or conditions rendering her totally disabled. Under the Plan, a claimant is totally disabled if she is under the regular care of a doctor and unable to perform all of the essential elements of her regular job with reasonable accommodation. MetLife concluded that evidence was lacking that Audino could not perform her job.

Audino's employer provided MetLife with a statement listing the occupational requirements of her job. For 1-33% of the workday, her job required: standing; walking; climbing stairs; grasping or handling; bending, stooping, or squatting; fine hand dexterity; forceful wrist twisting; and lifting of up to twenty pounds. For 67-100% of the workday, the job entailed: sitting; highly repetitive motion; fine visual attention; and precise verbal and written communication. The employer commented that Audino was not meeting performance expectations in areas of her job due to: (1) a decline in job accuracy after partial loss of sight; (2)

3

decline in focus and alertness; (3) inability to maintain interaction with a large group of individuals; (4) lack of responsiveness to requests; (5) poor attendance due to illness or doctor's appointments; and (6) limitations in assisting with meetings at other sights "which is a job task." In addition, in a telephone conversation with a MetLife claims administrator, the employer stated that it "would not be able to accommodate any restrictions or limitations." In denying Audino's claim, MetLife ignored these employer comments, which show that Audino's job performance had declined and suggest that, at the time she filed her claim, Audino was not meeting the minimum level of effectiveness in her job functions due to her medical conditions.

MetLife also failed to explain why Audino's evidence was insufficient to show that she could not do the specific tasks listed by her employer as occupational requirements. Audino provided MetLife with medical records showing that she has been treated for rheumatoid arthritis for several years, and, more recently, for optic neuritis. These records document subjective evidence of disability—her consistent complaints of severe fatigue, pain, stiffness, and vision difficulties. They also provided objective evidence of disability—in exams in 2001 and 2002, some of Audino's joints had been swollen at times and tender, she had severe arthritis around her trapezius, her best corrected near vision in her right eye was 20/70, her

hip muscles were tight and her back muscles sore, and blood tests indicated inflammation. Her rheumatologist opined that Audino would benefit from more rest and believed she should be placed on short term disability. Her opthalmologist stated that the results of her eye exam corresponded to her complaints of having difficulty with her near work.

MetLife based its conclusion that objective evidence that Audino could not perform her job functions was lacking largely on the opinions of medical consultants Tracey Schmidt (rheumatology and internal medicine) and David Turok (opthalmology), who did not examine Audino but reviewed her records. Our review of those records reveals several oversights in Dr. Schmidt's analysis. Dr. Schmidt failed to note that Audino's SED rate[1], although within the normal range at 25, was on the high end of normal. She minimized evidence that Audino's CRP rate[2] had been abnormal on September 17, 2002 at 0.91 mg/dL by incorrectly stating that the record contained no prior CRP rates for comparison. In fact, between February and September 2002, Audino's CRP rate had been measured five times. In three tests, her results were within the normal range of 0-0.4 mg/dL. However, the other two tests, in June and September, were well above normal at 1.4 and 0.91 mg/dL. *See*

[1] A blood test indicating non-specific inflammation.

[2] Another test for inflammation.

5

*Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 347 (5th Cir. 2002) (faulting disability plan administrator for characterizing test results as "essentially normal" when they were at times abnormal and "top normal")

Dr. Schmidt's analysis was unsatisfactory in other aspects as well. Contrary to her assertion that the file lacked mention of "any restricted ROM of joints other than the right foot abnormality," a February 2002 exam revealed that Audino's "wrists [were] swollen bilaterally with pain on range of motion of the left wrist" and her "left ankle was swollen with pain [on] range of motion." Although she noted in summarizing the evidence that Audino's physician had observed severe arthritis around the trapezius in August 2002, Dr. Schmidt failed to evaluate that finding in her analysis of whether Audino's impairments constituted disability under the plan.

Regarding Audino's rheumatoid arthritis and optic neuritis, Schmidt concluded that Audino's file lacked "objective evidence of a physical functional capacity impairment to a full time sedentary job." As to her optic neuritis, Dr. Turok opined that "Ms. Audino's current level of functionality should allow her to maintain her job as a management assistant. The occupational requirements could be met given her visual function." However, Audino's medical records show that she has complained of and been treated for extreme fatigue, joint pain, stiffness, swelling, and vision problems—impairments that would either prevent or make

6

difficult the tasks her employer listed as requirements of her job. Neither MetLife nor its consultants analyzed specifically how Audino's conditions affected her ability to engage in each of those tasks or explained why her conditions did not prevent her from performing those tasks.

We are also troubled by MetLife's failure to accord weight to Audino's consistent complaints of pain, even though those complaints were documented in her medical records for years before she sought benefits and there is no indication that she overstated her pain once she decided to seek benefits. We have recognized that pain cannot always be objectively quantified and have faulted an administrator for "focus[ing] on [] tests, rather than the pain and its effect[.]" *Lain*, 279 F.3d at 347.

We conclude that MetLife acted arbitrarily and capriciously in denying Audino's short-term disability benefits claim. The record reveals that MetLife ignored Audino's consistent complaints of pain as subjective, either minimized or ignored objective evidence of disability corroborating those complaints, and concluded that the evidence did not show an inability to do her job functions without analyzing the effect that her conditions would have on her ability to perform her specific job requirements. Thus, we cannot say that there is a rational connection between the found facts and the evidence. *Dowden*, 126 F.3d at 644. Because

7

MetLife reached its decision to deny benefits in an arbitrary manner, we vacate the district court's order granting summary judgment in favor of defendants, and instruct that court to remand to MetLife to perform a satisfactory inquiry into whether Audino can perform the essential functions of her job with reasonable accommodation. *See Quinn v. Blue Cross and Blue Shield Ass'n*, 161 F.3d 472, 476-78 (7th Cir. 1998) (finding that an administrator abused its discretion by failing to make an adequate inquiry into whether a claimant met the disability plan's definition of disabled and remanding to the administrator for adequate inquiry); *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 398-99 (5th Cir. 1998) (stating that the court should not make a decision belonging to the plan administrator in the first instance and remanding to the administrator for a new benefits eligibility determination).

VACATED and REMANDED with instructions.