# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 2, 2008

Charles R. Fulbruge III
Clerk

No. 08-50447

SHARON E. LOVE; KEVIN HEIDTMAN

                                        Plaintiffs-Appellants

v.

DELL INC., A Delaware Corporation, as a person and as a
fiduciary of Dell Inc. Comprehensive Welfare Benefits Plan;
VALUEOPTIONS INC., a Virginia Corporation, as a person and
as a fiduciary of Dell Inc. Comprehensive Welfare Benefits Plan;
VALUEOPTIONS OF TEXAS INC., a Texas Corporation, as a
person and as a fiduciary of Dell Inc. Comprehensive Welfare
Benefits Plan; DELL INCORPORATED COMPREHENSIVE
WELFARE BENEFITS PLAN

                                        Defendants-Appellees

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, BENAVIDES, and STEWART, Circuit Judges.

PATRICK E. HIGGIBOTHAM, Circuit Judge:

This appeal stems from a denial of health benefits under an employee welfare benefit plan subject to ERISA. After exhausting their administrative remedies, plaintiffs-appellants Love and Heidtman brought suit in the U.S. District Court for the Western District of Texas, on June 15, 2007. Love is Heidtman's mother and was the participant in the policy; Heidtman was an eligible dependent beneficiary under the plan. The defendants-appellees are the

entities that provided the insurance plan (Dell, Inc., and Dell Inc. Comprehensive Welfare Benefits Plan) and administered the plan (ValueOptions, Inc., and ValueOptions of Texas, Inc.). We refer to the parties as Love and ValueOptions for convenience.

On April 2, 2008, the district court, per Judge Sparks, granted summary judgment for the defendants and dismissed the plaintiffs' claims. That court issued an order based on its detailed examination of the relevant testimony and documents. Plaintiffs timely appealed.

## BACKGROUND

The record reflects that Kevin Heidtman required extensive treatment for serious mental illness and substance abuse from 2005 to 2007. On October 27, 2005, he was hospitalized after a suicide attempt. He was soon transferred to the Menninger Clinic in Houston, Texas, where he received inpatient care until January 24, 2006. ValueOptions initially denied coverage for this treatment because it considered Menninger to be an "acute inpatient" facility instead of a cheaper and less-intensive "residential" facility and because it considered the care not "medically necessary," the relevant standard for benefits. ValueOptions reversed this determination on appeal; its reviewing physician Dr. McDanald decided that Heidtman's physician had intended to send Heidtman only to a residential facility, and so he reviewed the "medical necessity" of this Menninger visit according to residential requirements rather than the more stringent acute-inpatient requirements. Accordingly, ValueOptions informed Love of this finding and paid retrospective benefits for this treatment.

Heidtman moved to Spruce Mountain Inn on January 26, 2006 to receive residential treatment there. ValueOptions did not approve this treatment, and

on appeal it affirmed, on the recommendation of the same Dr. McDanald,[1] that the Spruce Mountain treatment was not medically necessary and that Heidtman qualified for "intensive outpatient" treatment only, not residential treatment. Love appealed this determination a second time (a "Level II" appeal), submitting over 2300 pages of documents for review. ValueOptions referred this second appeal to Prest & Associates, an "independent review organization" for psychiatry, addictions treatment, and behavioral health claims. Prest's reviewer, Dr. Polsky, summarized the opinions and other materials on record in the matter and determined that ValueOptions' decision had been appropriate. Dr. Polsky used adult criteria in making this determination, although Heidtman was still 17 years old at the time he entered Spruce Mountain; he turned 18 on July 15, 2006, about two months before his residential treatment at Spruce Mountain ended, on September 10. In light of Dr. Polsky's review, ValueOptions confirmed its denial of benefits for this period once again.

ValueOptions approved intensive outpatient treatment at Spruce Mountain from September 10, 2006 until February 19 of the following year. Then Heidtman broke off treatment with Spruce Mountain due to mutual feelings that the relationship between him and Spruce Mountain had soured and that he would need to seek further treatment elsewhere.

By March 1, he was again an inpatient at the Menninger clinic, where he remained until April 12. ValueOptions did not approve the treatment, and its physician evaluator determined that outpatient treatment would have been sufficient. Menninger provided documentation to aid in the first appeal of this

---

[1] In fact the two appeals seem to have come before Dr. McDanald at the same time and to have been decided in the same document.

determination, but another physician at ValueOptions evaluated the file and came to the same conclusion as the first reviewer. On the Level II appeal on this claim, Love submitted a lengthy letter and referred ValueOptions to the exhibits that had been submitted for the previous Level II appeal (from the Spruce Mountain residential treatment). ValueOptions referred this appeal to Prest, who sought an evaluation from the same Dr. Polsky who handled Love's previous appeal. Polsky's review concurred with the previous determinations that this round of treatment at Menninger was not medically necessary. He used "Acute Inpatient" criteria in making this determination. ValueOptions informed Love, on September 20, 2007, that this claim was finally denied.

Thus, two determinations are here on appeal: (1) the determination that Heidtman's residential treatment at Spruce Mountain from January 26, 2006 to September 10, 2006, was not "medically necessary," and (2) the determination that Heidtman's treatment at Menninger from March 1, 2007 to April 12, 2007, was not "medically necessary."

## STANDARD OF REVIEW

This appeal emerges from a challenge of a determination governed by the Employee Retirement Income Security Act.[2] The standard of review of this court is de novo—that is, this court applies the same standard that the district court applied.

The district court applied an abuse of discretion standard. Under ERISA, a plan administrator has discretion to find facts related to coverage; its construal of the terms of the plan, on the other hand, are reviewed de novo by courts,

_____

[2] 29 U.S.C. § 1001 et seq.

unless the plan itself delegates discretion over plan construction to the administrator, as Love's plan delegated it to ValueOptions.[3] In the instant case, therefore, both ValueOptions findings of fact and law were reviewed for abuse of discretion.

Review for abuse of discretion in this context equates to a ruling on whether the administrator's determination was "arbitrary and capricious." We affirm the administrator's findings if they are supported by "substantial evidence," which has been defined as "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . ."[4]

Because the ruling was on summary judgment, the lower court construed all facts and inferences in the light most favorable to the nonmoving party, and it granted summary judgment because it believed there was no genuine issue of material fact and the defendants were entitled to judgment as a matter of law. We apply these same standards.

## DISCUSSION

ValueOptions reviewed each of its initial determinations twice. In each case, the second level of appeal was conducted by a specialized, independent review organization. In each case, all three reviewers found that Heidtman's treatment was not medically necessary and was therefore not covered under the plan.

---

[3] See Vega v. Nat'l Life Ins. Serv., Inc., 188 F.3d 287, 295 (5th Cir. 1999) (en banc).

[4] Wade v. Hewlett-Packard Development Co. LP Short Term Disability Plan, 493 F.3d 533, 540-41 (5th Cir. 2007); Jowers v. Secretary, U. S. Dept. of Health, Ed., and Welfare, 388 F.Supp. 376 (W.D. La. 1975).

Love challenges the determinations on many scores, a number of which are of minimal import under the governing law, and a number of which may not have been properly raised. We have reviewed all of the challenges, and we address the most substantial ones below.

As to both determinations, Love cites the opinions of some treating physicians tending to support her argument that the more intensive treatment was medically necessary in each case. But as Love acknowledges, ERISA does not require the opinions of treating physicians to be preferred over those of other physicians reviewing a file; ERISA merely requires that the opinions of treating physicians, as with all evidence submitted by the claimant, actually be taken in account in an administrator's determination.[5] ValueOptions claims it fulfilled this requirement, in that its review took account of all documents Love submitted and all other evidence before it. This is supported by the record. The treating physician opinions cited by Love are not nearly sufficiently clear or compelling as to lead us to conclude that ValueOptions' review was arbitrary and capricious in light of the considerable evidence it has provided that it gave Love's submissions full consideration and made a reasonable determination.

Love calls into question the criteria that ValueOptions used in making its determinations. As was ValueOptions' policy, its reviewers employed the American Society of Addiction Medicine, Inc. Patient Placement Criteria for the Treatment of Substance Related Disorders, Second Edition Revised, in evaluating Love's claims. Love argues that the reviewers chose to apply incorrect portions of the ASAM manual, however, to each claim.

---

[5] See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003).

First, Love notes that although Heidtman was still 17 when he began the first contested treatment, he was evaluated against the adult criteria for this treatment. This evaluation is unreasonable, Love asserts, because the ASAM volume provides different criteria for adolescents (defined as individuals aged 13-18) and adults, and since he was still 17 upon the beginning of treatment, Heidtman should have been evaluated against the adolescent criteria. ValueOptions responds that this was not abuse of discretion because the ASAM Criteria allow for some flexibility "on a case-by-case basis." In any case, it points out, the ASAM Criteria encourage separation between adults and adolescents, so if Heidtman had been classified as an adolescent, his treatment at Spruce Mountain would not have been strictly appropriate under the Criteria, because the program there included individuals above age 18 and was referred to as an adult program in Spruce Mountain's own literature and records. And, ValueOptions argues, this was more than a name: the program was oriented toward adult outcomes, such as independent living. Further, ValueOptions' pre-existing payment agreement with Spruce Mountain only approves Spruce Mount to provide adult care. Finally, Heidtman was 18 for part of the treatment. While no single one of these factors is decisive, taken together they leave no doubt that the decision to evaluate the contested Spruce Mountain claim using the adult criteria was not an abuse of discretion.

Second, Love claims that ValueOptions applied the wrong ASAM criteria in the case of the second contested treatment, because although this treatment was in fact "subacute" or "residential," ValueOptions applied "acute" criteria. But Menninger was clearly classified as an acute facility under ValueOptions' framework; the first time that Heidtman was treated there, ValueOptions informed Love of this fact. It made an exception in that first case, as noted

7

above, due to its reviewer's finding as to the treating physician's intention; but making an exception in the first case by no means estopped it from reverting back to its standard classification of Menninger as an acute facility on future occasions. Both parties acknowledge that Menninger provided more intensive and expensive care than a regular residential facility. Even if, as Love asserts, Menninger lacked some features of an acute facility, ValueOptions amply supports its evaluation of Heidtman's stay there against the acute criteria. Thus, ValueOptions' assessing the contested Menninger claim against its acute care criteria was not an abuse of discretion.

Love also raises a number of issues regarding ValueOptions' procedures throughout the determinations process. Violations of ERISA's procedural requirements – failures to provide "full and fair review" and to engage in meaningful dialogue – do not usually lead to a claim for damages,[6] although procedural failures that prejudice final determinations may provide grounds for a court to overturn an administrator's decision and provide an appropriate remedy. In this case, the record shows that ValueOptions was, as the district court found, substantially compliant with ERISA's procedural requirements.[7] Love has not pointed to any facts establishing that prejudice resulted from ValueOptions' alleged procedural failures.

---

[6] Krauss v. Oxford Health Plans, Inc., 517 F.3d 614, 630 (2d Cir. 2008) ("A full and fair review concerns a beneficiary's procedural rights, for which the typical remedy is remand for further administrative review.") See Weaver v. Phoenix Home Life Mut. Ins. Co., 990 F.2d 154, 159 (4th Cir.1993); VanderKlok v. Provident Life & Accident Ins. Co., 956 F.2d 610, 616-17 (6th Cir.1992); Wolfe v. J.C. Penney Co., 710 F.2d 388, 393-94 (7th Cir.1983)).

[7] "Challenges to ERISA procedures are evaluated under the substantial compliance standard. This means that technical noncompliance with ERISA procudures will be excused so long as the purposes of section 1133 have been fulfilled." Robinson v. Aetna Life Ins. Co., 443 F.3d 389, 392-93 (5th Cir. 2006) (internal quotations and citations omitted).

Finally, the record belies Love's claim that Dr. Polsky's reviews of the record were not rationally connected to known facts. The record suggests that Dr. Polsky wrote a balanced review of a record that stretched to several thousand pages, and as was the case before the district court, Love has not demonstrated that Dr. Polsky ignored the facts before him.

In sum, ValueOptions' determinations are supported by substantial evidence in the record, and they do not, therefore, represent an abuse of discretion.

## CONCLUSION

For the reasons stated above, the judgement of the district court is AFFIRMED.