**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

INDEPENDENCE NEWS, INCORPORATED,
a North Carolina Corporation;
POLO SOUTH, INCORPORATED,

       *Plaintiffs-Appellants,*

       and

CENTRAL AVENUE VIDEO,
INCORPORATED, a North Carolina
Corporation,

       *Plaintiff,*

O'SHEILDS ENTERTAINMENT,
INCORPORATED; RIVERSIDE VIDEO
PLUS,

       *Intervenors/Plaintiffs,*

       v.

CITY OF CHARLOTTE, a North
Carolina Municipal Corporation,

       *Defendant-Appellee.*

No. 08-1654

INDEPENDENCE NEWS, INCORPORATED,
a NORTH CAROLINA CORPORATION;
POLO SOUTH, INCORPORATED,

*Plaintiffs-Appellants,*

and

CENTRAL AVENUE VIDEO,
INCORPORATED, a North Carolina
Corporation,

*Plaintiff,*

O'SHEILDS ENTERTAINMENT,
INCORPORATED; RIVERSIDE VIDEO
PLUS,

*Intervenors/Plaintiffs,*

v.

CITY OF CHARLOTTE, a North
Carolina Municipal Corporation,

*Defendant-Appellee.*

No. 08-1655

Appeals from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Senior District Judge.
(3:02-cv-00014-GCM)

Argued: March 27, 2009

Decided: June 3, 2009

Before WILLIAMS, Chief Judge, and SHEDD and AGEE,
Circuit Judges.

Affirmed by published opinion. Chief Judge Williams wrote the opinion, in which Judge Agee concurred. Judge Shedd wrote a separate concurring opinion.

## COUNSEL

Joseph L. Ledford, Charlotte, North Carolina, for Appellants. Robert Erwin Hagemann, OFFICE OF THE CITY ATTOR-NEY, Charlotte, North Carolina, for Appellee.

## OPINION

WILLIAMS, Chief Judge:

In 1994, the City of Charlotte ("City") enacted an Adult Zoning Ordinance ("AZO") to protect certain sensitive uses from the "secondary effects" associated with adult establishments. The ordinance contains an amortization provision that required covered adult establishments to close or relocate to a conforming location by January 18, 2002. Independence News, Inc. ("Independence News") and Polo South, Inc. ("Polo South") (collectively, "Appellants"), which own and operate sexually oriented adult establishments subject to the AZO, filed this lawsuit in the District Court for the Western District of North Carolina seeking to avoid enforcement of the amortization provision against their establishments. Appellants claimed, *inter alia*, that enforcement of the AZO would strip them of their First Amendment protections because their adult establishments had not produced any unwanted secondary effects in the years since the AZO's enactment.

The district court dismissed the Appellants' as-applied challenge to the secondary effects rationale of the AZO, and it also granted summary judgment in favor of the City on Appellants' facial challenge to the AZO's variance provision,

which does not require the Charlotte Zoning Board of Adjustment ("ZBA") to consider the absence of "secondary effects" when deciding whether to grant a variance.

On appeal, Appellants challenge both of these rulings. For the following reasons, we affirm.

I.

A.

On January 18, 1994, the City adopted the AZO, a text amendment to the Charlotte Zoning Ordinance. Charlotte, N.C., Ordinance 3782 (Jan. 18, 1994), current version codified at Charlotte, N.C., Code, app. A §§ 2.201, 9.8503, 9.903, 9.1103, and 12.518 (2008). The AZO defined the term "adult establishment" and limited the location of adult establishments to several zoning districts: B-2 (Business), UMUD (Uptown Mixed Use District), and I-1 and I-2 (Industrial). *Id.* It also included a section, Section 12.518, which required, and continues to require, that adult establishments be located at certain distances from any protected use—that is, any residential district, school, church, child care center, park or playground. *Id.* Specifically, section 12.518(a) provides that adult bookstores and adult mini-motion picture theaters must be at least 1,500 feet from any protected use, and section 12.518(b) requires that adult live entertainment establishments be at least 1,000 feet from any protected use. *Id.* Also, section 12.518(c) provides that adult bookstores and adult mini-motion picture theaters must be at least 1,000 feet from any other adult establishment, and section 12.518(d) provides that adult live entertainment establishments be at least 500 feet from any other adult establishment. *Id.* No more than one adult establishment may be located in the same building. *Id.*

Section 12.518 was added in an effort to "establish reasonable regulations to prevent a concentration of adult establishments within the City of Charlotte and to separate adult

establishments from . . . sensitive uses" because "[s]tudies . . . show[ ] that lowered property values and increased crime rates tend to accompany and are brought about by the concentration of adult establishments." *Id.* In the City's view, such "[r]egulation . . . [wa]s necessary to insure that [the effects from adult establishments] do not contribute to the blighting of surrounding neighborhoods and to protect the integrity of the City's schools, churches, child care centers, parks and playgrounds which are typically areas in which juveniles congregate." *Id.*

Through the amortization provision, the AZO gave preexisting adult establishments not in compliance with the protected use separation requirements of sections 12.518(a) and (b) until January 18, 2002—eight years from the date of the AZO's adoption—to either close or relocate to a conforming location. *Id.*

Initially, section 12.518 did not allow the ZBA to authorize a variance from the protected use separation requirements, but on March 18, 1996, the City granted the ZBA that authority by adding section 12.518(g), which provides:

> [B]efore granting a variance from the separation requirements . . . , the Board of Adjustment shall find that thoroughfares, traffic circulation patterns, structures or other natural or man-made geographic or topographic features are likely to provide an adequate measure of protection for the protected zoning or use from any secondary effects of the adult establishment.

Charlotte, N.C., Ordinance 489 (Mar. 18, 1996), codified at Charlotte, N.C., Code, app. A § 12.518(g) (2008).

B.

Independence News has operated an adult bookstore at its present location in the City since 1993.[1] In October of 2001, the Charlotte-Mecklenburg Zoning Administrator sent Independence News a notice, advising that Independence News's adult uses were in violation of the protected use separation requirements of section 12.518(a) and reminding Independence News that the AZO's amortization provision required Independence News to close or relocate to a conforming location by January 18, 2002.

Similarly, Polo South has operated a live adult entertainment establishment known as the "Carousel Club" at its present location in the City since 1993. In October of 2001, the Charlotte-Mecklenburg Zoning Administrator likewise sent Polo South a notice, advising that Polo South's adult uses were in violation of the protected use separation requirements of section 12.518(b) and reminding Polo South that the AZO's amortization provision required Polo South to close or relocate to a conforming location by January 18, 2002.

One week before the amortization deadline, Independence News and another affected business filed this action in federal district court, challenging certain provisions of the City's Zoning Ordinance. A few days later, in another case challenging the AZO, the district court entered a preliminary injunction enjoining the City from enforcing the amortization provision against any affected business pending final resolution. *See Queen City Video & News, Inc. v. City of Charlotte*, No. 3:00CV618 (W.D.N.C. Jan. 16, 2002) (order granting

---

[1]After moving to its current location in 1993, Independence News began operations with an adult bookstore and an adult mini-motion picture theater arcade. In 1999, the City of Charlotte adopted a Sexually Oriented Business Ordinance, Charlotte, N.C., Ordinance 1341 (Aug. 23, 1999), and consequently, Independence News ceased operating mini-motion picture theaters.

motion for preliminary injunction). The district court held this case in abeyance pending the disposition of the *Queen City* case.

Ultimately, the district court granted summary judgment in favor of the City in *Queen City* on all claims except one, and the parties in *Queen City* entered into a Stipulation of Voluntary Dismissal with Prejudice. The district court then activated this case, and the City consented to the intervention of Polo South and two other affected businesses, agreeing that it would not enforce the amortization provision until the matters before the court were resolved.

The amended complaints filed by Independence News and Polo South demanded a permanent injunction prohibiting the City from enforcing the amortization provision against the Appellants, a declaratory judgment that section 12.518 of the City's Zoning Ordinance violated their First Amendment rights both facially and as-applied, and an order directing the ZBA to consider whether the Appellants' establishments actually generate adverse secondary effects against protected uses when determining whether or not to grant a variance.

Relevant to this appeal, Independence News and Polo South claimed that section 12.518 of the AZO is "unconstitutional as applied against [Appellant]s based upon the evidence . . . concerning the history of [Appellant]s' businesses over a nine year period which clearly shows that no adverse secondary effects to protected zoning and uses can be attributed to [Appellant]s' constitutionally protected adult business uses." (J.A. at 30, 64.) In particular, Independence News and Polo South alleged that, during the nine year period following the AZO's enactment, property values had held steady or generally increased in the area surrounding their establishments; no sex related crimes had occurred in the area, and crime in general had not increased in the area as of result of their adult establishments; a number of businesses had located within the area surrounding the Appellants' adult establishments; and

residential construction was currently taking place within the area surrounding Appellants' establishments.

On June 3, 2004, the district court granted the City's motion for partial judgment on the pleadings and dismissed the as-applied challenge to the secondary effects rationale of the AZO, concluding that "it is . . . settled that [Appellants] can not maintain an 'as-applied challenge' to [the] secondary effects rationale of the AZO's time, place, and manner restrictions." (J.A. at 85.) Then, on September 6, 2006, the district court granted in part and denied in part the City's motion for partial summary judgment. As part of that order, the district court granted summary judgment in favor of the City on the Appellants' allegation that the AZO is unconstitutional because its variance provision does not allow the ZBA to consider factual evidence concerning the secondary effects of a particular adult business.

On May 9, 2008, Appellants filed an amended stipulation of dismissal as to all outstanding claims and preserved those resolved issues for this appeal. After a final judgment in favor of the City on the remaining claims asserted by other affected businesses, Appellants timely noticed an appeal, and we possess jurisdiction under 28 U.S.C.A. § 1291 (West 2006).[2]

---

[2]We requested additional briefing on the issue of whether we have jurisdiction to hear adjudicated claims following a voluntary dismissal of the remaining unadjudicated claims without prejudice. *Compare, e.g.*, *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1065-70 (9th Cir. 2002) (finding jurisdiction) *with Chappelle v. Beacon Commc'ns Corp.*, 84 F.3d 652, 653-55 (2d Cir. 1996) (finding no jurisdiction). We, however, need not reach this question today because the parties have satisfied us that the dismissal of the Appellants' remaining claims after the grant of partial summary judgment in favor of the City was with prejudice.

## II.

## A.

Before us, Appellants contest only two of the district court's rulings. First, they contend that, in granting partial judgment on the pleadings in favor of the City, the district court incorrectly concluded that Appellants did not have the right to maintain an as-applied challenge to the application and enforcement of the AZO's protected use separation requirements and amortization provision to Appellants' adult establishments. Second, Appellants contend that the district court erred in granting summary judgment to the City on Appellants' facial challenge to section 12.518(g). On this claim, the Appellants take issue with the fact that section 12.518(g) does not require the ZBA to consider evidence that Appellants' particular adult establishments do not generate adverse secondary effects in deciding whether to grant Appellants variances should they ultimately seek them.

We review *de novo* the district court's decision to grant partial judgment on the pleadings in favor of the City, applying the same standard for Federal Rule of Civil Procedure 12(c) motions as for motions made pursuant to Rule 12(b)(6). *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). And, we also review *de novo* the district court's grant of summary judgment in favor of the City, applying the same Rule 56 standard as the district court was required to apply. *BB&T Corp. v. United States*, 523 F.3d 461, 471 (4th Cir. 2008).

## B.

We first turn to the district court's grant of partial judgment on the pleadings in favor of the City on Appellants' as-applied challenge to the AZO's protected use separation requirements and amortization provision.

In *Ward v. Rock Against Racism*, 491 U.S. 781 (1989), a case involving a facial challenge to a content-neutral time, place, and manner restriction, the United States Supreme Court stated that "the validity of [the content-neutral time, place and manner restriction] depends on the relation it bears to the overall problem the government seeks to correct, *not on the extent to which it furthers the government's interests in an individual case*. . . . [The restriction] is valid so long as the city could reasonably have determined that its interests overall would be served less effectively without the [restriction] than with it." 491 U.S. at 801 (emphasis added). Based on this statement, the district court concluded that Appellants could not maintain an as-applied challenge to the secondary effects rationale of the AZO and granted judgment on the pleadings in favor of the City.

We agree with the district court that judgment in favor of the City was proper on this claim. Like the ordinance in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986), which prohibited any adult movie theater from locating within 1,000 feet of any residential zone, single- or multiple-family dwelling, church, park, or school, the AZO is properly analyzed as a time, place, and manner regulation because it does not ban adult establishments altogether but merely requires that such establishments be located certain distances from protected uses. *See id.* at 46 (analyzing Renton ordinance as a time, place, and manner restriction). And, just as the *Renton* ordinance was aimed at the secondary effects of the adult theaters—that is, increasing crime rates, decreasing property values, and the decreasing quality of Renton's neighborhoods—rather than at the content of the films shown at the theaters, the AZO is aimed at the secondary effects of adult establishments, not the content of regulated speech, and is thus properly deemed "content-neutral." *See id.* at 47-49 (analyzing the Renton ordinance as content-neutral).

Under *Renton*, content-neutral time, place, and manner restrictions such as the AZO are "acceptable as long as they

are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." *Id.* at 47. Such regulations must also be "narrowly tailored" to achieve the substantial governmental interest. *Ward*, 491 U.S. at 798 ("[W]e reaffirm today that a regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but that it need not be the least restrictive or least intrusive means of doing so."); *see also Renton*, 475 U.S. at 52 (emphasizing that the Renton ordinance was "'narrowly tailored' to affect only that category of theaters shown to produce the unwanted secondary effects").

Moreover, when enacting an ordinance aimed at secondary effects, a City must rely on "evidence of incidental adverse social effect that provides the important governmental interest justifying reasonable time, place and manner restrictions on speech or expressive conduct." *Mitchell v. Comm'n on Adult Entm't Establishments*, 10 F.3d 123, 133 (3d Cir. 1993). In enacting adult zoning ordinances, the City, however, is entitled to "rely heavily on the experience of, and studies produced by, other cities and states, as well as on court opinions from other jurisdictions," *id.* at 133, and need not, before enacting such ordinances, "conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses."[3] *City of Renton*, 475 U.S. at 51-52.

---

[3]These standards for reviewing challenges to content-neutral zoning ordinances targeting the secondary effects of adult establishments apply regardless of whether that challenge is styled as facial or as-applied. *See David Vincent, Inc. v. Broward County*, 200 F.3d 1325, 1333 (11th Cir. 2000) (noting that, in as-applied challenge, "zoning ordinances that target the social ills associated with adult entertainment are constitutional if they are narrowly tailored to further a substantial government interest and allow for reasonable alternative avenues of communication" (internal quotation marks omitted)); *One World One Family Now v. City & County of Honolulu*, 76 F.3d 1009, 1012 (9th Cir. 1996) (applying time, place, and manner standard to an as-applied challenge to a content-neutral ordinance).

In this appeal, Appellants do not argue that the City's ordinance was not narrowly tailored to serve a substantial Government interest, that the City lacked an adequate evidentiary basis for adopting the proposed legislation, or that the ordinance did not provide for reasonable alternative avenues of communication; in fact, Appellants *concede* that the AZO as adopted was facially valid. Rather, Appellants seek to escape the AZO's amortization provision by arguing that, although "a city must have latitude to experiment, at least at the outset," *City of Los Angeles v. Alameda Books*, 535 U.S. 425, 451 (2002) (Kennedy, J., concurring in the judgment), once the data from the "experiment" has been collected, the Appellants must have an opportunity to show that the data does not support the City's original hypothesis—that adult establishments generate adverse secondary effects. Thus, according to Appellants, the AZO—a time, place, and manner restriction like the one at issue in *Renton*—is unconstitutional as-applied to their establishments because empirical data gathered in the years *after* the passage of the ordinance in 1994 demonstrates that their particular adult establishments have not generated adverse secondary effects and therefore does not support the original theoretical justification for passing the ordinance.

Appellants are quite right that the Supreme Court has indicated that cities "'must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems.'" *City of Renton*, 475 U.S. at 52 (quoting *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 71 (1976) (plurality opinion)); *see also Alameda Books*, 535 U.S. at 451 (Kennedy, J., concurring in the judgment) ("[W]e have consistently held that a city must have latitude to experiment, at least at the outset, and that very little evidence is required."). Although these statements conceivably could be read, as Appellants read them, to imply that a city's secondary effects rationale for enacting a zoning ordinance like the AZO or the *Renton* ordinance may be subject to a challenge based on post-enactment data, we are not aware of—and Appellants do not point us to—any Supreme Court or federal appellate court

opinion allowing such a challenge.[4] Moreover, in the absence of any clearly defined standards for judging such a post-enactment First Amendment challenge—and Appellants provide none here—we are disinclined to grant Appellants relief on this basis.

As discussed above, the applicable standard as it relates to the secondary effects rationale requires only that a city show that, "in *enacting* its adult [establishment] zoning ordinance," the city relied on evidence that is "reasonably believed to be relevant to the problem [of secondary effects] that the city addresses." *City of Renton*, 475 U.S. at 51-52 (emphasis added). Thus, when cities exercise their power to zone the location of adult establishments, they need not show that each individual adult establishment actually generates the undesired secondary effects. *See Ward*, 491 U.S. at 801 ("[T]he validity of [an ordinance] depends on the relation it bears to the overall problem the government seeks to correct, *not on the extent to which it furthers the government's interests in an individual case*." (emphasis added)). And, it follows that the City of Charlotte does not have to show that a particular adult establishment generates adverse secondary effects each time

---

[4]Appellants contend that *Peek-a-Boo Lounge of Bradenton, Inc. v. Manatee County*, 337 F.3d 1251 (11th Cir. 2003), supports their position. In that case, the plaintiffs challenged two local ordinances; the first ordinance imposed requirements on the physical layout of adult dancing establishments, and the second was a general anti-public nudity statute, not a zoning ordinance. The Eleventh Circuit reversed the district court's grant of summary judgment in favor of the County on the plaintiffs' challenges to both ordinances.

In *Peek-a-Boo Lounge*, the plaintiffs were challenging the county's evidentiary basis for *enacting* the ordinances and submitted *pre-enactment* data to support their as-applied challenge to the anti-public nudity statute. *Id.* at 1266-67, 1270-73. In the present case, however, Appellants do not challenge whether the City had a sufficient evidentiary basis for enacting the AZO, but challenge the City's failure to consider evidence that was gathered *after the ordinance was passed* and that appellants contend show that their establishments have not in fact generated secondary effects. Thus, *Peek-a-Boo Lounge* provides Appellants no support.

it seeks to enforce the AZO's protected use separation requirements and amortization provision against that adult establishment. *Cf. BZAPS, Inc. v. City of Mankato*, 268 F.3d 603, 607 (8th Cir. 2001) ("[O]nce a city has validly forbidden adult uses within a particular area, it may enforce that ordinance against all adult uses in that area without showing that a particular use will produce secondary effects."); *David Vincent, Inc. v. Broward County*, 200 F.3d 1325, 1332 n.11 (11th Cir. 2000) ("Courts have frequently upheld the application of new zoning regulations to existing adult businesses with an amortization period."); *Ambassador Books & Video v. City of Little Rock*, 20 F.3d 858, 865 (8th Cir. 1994) (rejecting argument that application of ordinance to existing businesses violated the businesses' First Amendment rights).

What matters here is whether the City had a sufficient evidentiary basis for adopting the ordinance in 1994, *see City of Renton*, 475 U.S. at 51-52 (looking to evidence of secondary effects available to Renton at the time of enactment), and Appellants concede that it did. Accordingly, the district court's grant of partial judgment on the pleadings must be affirmed.

## C.

We next turn to the district court's grant of summary judgment in favor of the City on Appellants' claim that the AZO is unconstitutional because its variance provision does not require the ZBA to consider factual evidence concerning the secondary effects of a particular adult business.[5] In their complaints, Independence News and Polo South maintain:

---

[5]At oral argument, there was some suggestion that we should abstain under *Younger v. Harris*, 401 U.S. 37 (1971), from addressing this issue because the Appellants would have the opportunity to challenge the constitutionality of the variance provision on appeal in state court should any request for a variance be denied by the Zoning Board of Adjustment. As noted by Appellants' counsel, however, North Carolina law precludes the

The failure on the part of the City Council . . . to allow the . . . Zoning Board of Adjustment to consider factual evidence negating the presence or existence of adverse secondary effects a particular adult [business] has on protected zoning or uses reflects that the City is not interested in the factual data available on the issue of the impact of secondary effects on protected uses, and is instead only concerned with the political considerations, moral objections and impermissible objections to constitutionally protected speech and to the content of speech, as opposed to a genuine concern for the prevention and elimination of adverse secondary effects, all in violation of the plaintiff's right to the exercise of free speech and the dissemination of constitutionally protected material and the right of free expression, as guaranteed by the First Amendment of the United States Constitution and the Fourteenth Amendment of the United States Constitution.

(J.A. at 30, 65.)

---

Zoning Board of Adjustment, as well as reviewing courts, from considering the constitutionality of the applicable zoning ordinance when determining whether to grant a variance. *See 321 News & Video, Inc. v. Zoning Bd. of Adjustment*, 619 S.E.2d 885, 887-88 (N.C. Ct. App. 2005)(refusing to consider petitioner's arguments that zoning ordinance was unconstitutional as applied because the Board failed to consider the evidence of the lack of secondary effects violated the First Amendment). Under North Carolina law, the appropriate avenue to challenge the constitutionality of a zoning ordinance is to file a *separate* civil action in state court. *Dobo v. Zoning Bd. of Adjustment*, 562 S.E.2d 108, 112 (N.C. Ct. App. 2002), *rev'd in part on other grounds*, 576 S.E.2d 324 (N.C. 2003). Because there is no ongoing state judicial proceeding in which Appellants can raise their constitutional challenges, *Younger* abstention is inappropriate. *See Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 629 (1986) (noting that, for *Younger* abstention to be appropriate, an aggrieved party must be able to raise constitutional claims in the state-court's judicial review of the administrative proceeding).

Thus, Appellants request an order directing the ZBA to consider evidence on whether the Appellants' uses actually generate adverse secondary effects when deciding whether to grant a variance.

Like the as-applied challenge to the AZO's secondary effects rationale, this claim seeks an avenue for the Appellants to avoid the consequences of the AZO's amortization provision. And, like that challenge, we think this claim too must fail.

Considerations about the future play a large, if not central, part in any zoning decision, and, as noted above, cities need not wait for adult establishments to generate adverse secondary effects in their city before taking action to prevent them from doing so in the future. *City of Renton*, 475 U.S. at 51-52. Where, as here, a zoning ordinance legitimately targets secondary effects, it would make little sense to then require the ZBA to consider evidence that a particular adult establishment is not *currently* generating adverse secondary effects when deciding whether to grant that establishment a variance. In such a case, there is no assurance that the adult establishment will not begin to generate secondary effects in the future. And, if a variance were granted because an establishment is not now generating secondary effects, rather than because physical conditions provide an adequate buffer against any secondary effects that might be generated in the future, there would be no mechanism for addressing those effects if and when they began to occur.

In sum, we simply do not see how the Constitution requires a zoning board to consider whether an adult establishment actually generates secondary effects when deciding whether to grant that establishment a variance. *Cf. David Vincent, Inc.*, 200 F.3d 1325 at 1332 n.11 (noting that the Constitution does not require either a grandfathering clause for existing non-conforming businesses or a waiver provision allowing adult businesses with community approval to locate outside of the

areas zoned for their use). This conclusion comports with our conclusion above that the City may enforce the AZO against an adult establishment without regard to whether that particular establishment generates the undesired secondary effects. Thus, we conclude that the district court properly granted summary judgment in favor of the City on this claim.

## III.

For the foregoing reasons, the judgments of the district court are hereby

*AFFIRMED*.

SHEDD, Circuit Judge, concurring:

I concur in the result reached by the majority because I believe appellants' claims are clearly foreclosed by *Ward v. Rock Against Racism*, 491 U.S. 781 (1989).