# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-20196

United States Court of Appeals
Fifth Circuit

**FILED**
April 18, 2014

Lyle W. Cayce
Clerk

CYNTHIA SPENRATH

Plaintiff - Appellant

v.

THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CV-1979

Before JONES, SMITH, and OWEN, Circuit Judges.

PER CURIAM:*

Cynthia Spenrath appeals from the district court's grant of summary judgment upholding the denial of her claim for long-term disability benefits. We find no error of fact or law and affirm, and we add an award of appellate attorney's fees.

Spenrath worked at Protect Controls, Inc. as an order entry manager. In 2005, Spenrath started having seizure-like episodes in which she would be non-

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-20196

responsive for about five minutes. She asserted that the episodes were accompanied by swishing in her ears, limb weakness, and an inability to move or speak. Spenrath's primary care physician, Dr. Michael DiTeresa, referred her to two neurologists, Dr. Balbir Singh and Dr. J. William Lindsey. Neither neurologist made a definitive diagnosis, but they mentioned the possibility of multiple sclerosis based on abnormal MRI results and recommended additional testing. Spenrath did not undergo additional testing. Though she continued to take anticonvulsant medication, Spenrath did not visit the neurologists after 2005.

In 2008, Spenrath experienced difficulty doing her job, with a diminished ability to focus and type information into the computer. When she failed to complete several assignments, she was given a negative performance review and a salary reduction. Shortly after the negative review, she ceased working on February 22, 2008. On May 7, Spenrath submitted a claim for long-term disability benefits under the company's ERISA Plan, and claimed commencement of disability as of February 22, 2008.

The Plan's administrator, Guardian Life Insurance Company ("Guardian") began a review of the long-term disability claim. Under the Plan, Guardian has "discretionary authority to determine eligibility for benefits and to construe the terms of the [Plan] with respect to claims." In order to receive long-term disability payments, the plan sets forth several requirements:

> (a)    You must (i) become *disabled* while insured by this *plan*; and (ii) remain *disabled* for this *plan's [ninety-day] elimination period.*
>
> (b)    You must be: (i) under a *doctor's regular care* for the cause of your *disability*, starting from the date you were first *disabled*; and (ii) receiving medical care appropriate to the cause of your *disability* and any other *sickness* or *injury* which exists during your *disability*.

(c)     You must send us written documentation of: (i) medical evidence in support of the limits causing your *disability* . . . .

The Plan defines "disability or disabled" as "physical, mental or emotional limits caused by a current *sickness* or *injury*" that preclude the full time performance of the major duties of the claimant's occupation. The ninety-day elimination period is the length of time a claimant must be disabled prior to becoming eligible for long-term disability.

Guardian requested and reviewed medical records from multiple sources, including Dr. DiTeresa, and conducted interviews with Spenrath's mother, her power of attorney/representative, and her employer. After the initial review, Guardian determined that it had not been provided with medical evidence of a condition that functionally impaired and limited Spenrath throughout the elimination period (February 22-May 22, 2008). Guardian sent a denial letter on December 2, 2008, which also informed Spenrath of the additional information and documentation that would be necessary if Spenrath desired to request reconsideration.

Spenrath appealed the denial on December 31, and informed Guardian that she would provide supplemental documentation. She submitted additional medical and pharmacy records in April 2009. After it received the additional documentation, Guardian sent the appeal for Multi-Disciplinary Review (MDR). The MDR panel comprised an independent board certified neurologist, an independent board certified psychiatrist, and an independent board certified cardiologist. Following review of the medical records and conversations with Spenrath's medical providers, each member of the MDR panel found that the medical records submitted did not support a finding that Spenrath was unable to perform her occupation after February 21, 2008. Based on the recommendation of the MDR panel, Guardian upheld its decision to deny long-term disability benefits.

No. 13-20196

Spenrath filed suit to recover long-term disability benefits under the Plan. The district court granted summary judgment in favor of Guardian. On appeal, Spenrath argues that her claim was based upon substantial evidence and that Guardian refused to credit some evidence while relying on other evidence that misstated portions of the factual record.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo* in the ERISA context, applying the same standard as the district court. *See Corry v. Liberty Life Assurance Co. of Bos.*, 499 F.3d 389, 397 (5th Cir. 2007). Where the benefits plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan" we review only for an abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Anderson v. Cytec Indus., Inc.*, 619 F.3d 505, 512 (5th Cir. 2010). The plan administrator's factual determinations are also reviewed for abuse of discretion. *See Lafleur v. La. Health Serv. and Indem. Co.*, 563 F.3d 148, 159 (5th Cir. 2009). The plaintiff carries the burden of proving abuse of discretion on the part of the plan administrator. *See Dowden v. Blue Cross & Blue Shield of Tex., Inc.*, 126 F.3d 641, 644 (5th Cir. 1997) (per curiam).

Under this standard, "[i]f the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail." *Ellis v. Liberty Life Assurance Co. of Bos.*, 394 F.3d 262, 273 (5th Cir. 2004). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). "A decision is arbitrary if it is made without a rational connection between the known facts and decision." *Anderson*, 619 F.3d at 512. "Ultimately, [this court's] review of the administrator's decision need not be particularly complex

4

or technical; it need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness—even if on the low end." *Corry*, 499 F.3d at 398 (citation and internal quotation marks omitted).

## DISCUSSION

### I. Substantial Evidence Standard.

Spenrath argues that Guardian abused its discretion when it determined that she was not disabled even though she provided substantial evidence of her disability within the terms of the Plan. The question whether there was substantial evidence of the claimaint's disability is not relevant under our review. "The law requires only that substantial evidence support a plan fiduciary's decisions, including those to deny or to terminate benefits, *not* that substantial evidence (or, for that matter, even a preponderance) exists to support the employee's claim of disability." *Ellis*, 394 F.3d at 273. Thus, an administrative record could contain both substantial evidence of an employee's disability and substantial evidence supporting the plan fiduciary's decision to deny benefits. Accordingly, Spenrath's argument that her position is also supported by substantial evidence is misplaced.

### II. Failure to Credit Evidence.

#### A. Objective Evidence.

Spenrath contends that Guardian failed to credit the medical evidence contained in the record. Guardian responds that its decision was based on the entire administrative record, including Spenrath's medical evidence. In its final rejection letter, Guardian specifically discussed much of Spenrath's medical evidence. The evidence was also thoroughly considered in the opinions of the three independent medical specialists, upon which Guardian relies.

Specifically, Guardian notes that the neurologists, Dr. Singh and Dr. Lindsey, failed to diagnose Spenrath after they examined her in 2005. Although the neurologists recommended additional testing, Spenrath declined

the recommendation and never underwent additional testing to confirm a neurological condition. Guardian also notes that the record fails to account for Spenrath's continued ability to work from 2005 to 2008. The board certified neurologist who reviewed Spenrath's claim could not determine what would have caused Spenrath suddenly to become disabled in 2008.

Because Spenrath was not under the treatment of a neurologist, Guardian and the MDR panel focused on the treatment records of the primary care physician, Dr. DiTeresa. They found that the tersely written treatment notes provided little information regarding Spenrath's condition, complaints, or limitations. Dr. DiTeresa's disability letters failed to explain the basis for the doctor's assertion that Spenrath was no longer fit to return to work. Dr. DiTeresa also failed to account for his previous letter stating that Spenrath would return to work on March 10, 2008. Guardian concluded that the records and letters furnished insufficient support for Spenrath's disability claim.

Spenrath also relies on a letter from her therapist, Angela Soper, who stated that Spenrath was unable to work. Guardian noted that the letter was not a medical record, and that as a counselor, Soper was not in a position to provide a medical diagnosis. The letter also highlighted other issues such as Spenrath's stress at work and depression, but these issues are unrelated to the seizure disorder.

Guardian did not fail to credit the evidence Spenrath provided; instead, it concluded that that evidence was not sufficient. ERISA requires that all evidence "actually be taken into account in an administrator's determination." *Love v. Dell, Inc.*, 551 F.3d 333, 337 (5th Cir. 2008). It does not require that the opinions of treating physicians be preferred over those of other physicians reviewing a file. *Id.* Because Guardian weighed the evidence and exercised its discretion, this court may not second guess its determination.

## B.    Subjective Evidence.

Spenrath contends that Guardian failed to consider subjective evidence of her seizures.  She suggests that two unpublished opinions support her position: *Audino v. Reytheon Co. Short Term Disability Plan*, 129 F. App'x. 882 (5th Cir. 2005) (per curiam) and *Schully v. Cont'l Cas. Co.*, 380 F. App'x. 437, 439 (5th Cir. 2010) (per curiam).  Not only are these unpublished opinions non-precedential, they are also easily distinguishable.  In both *Audino* and *Schully* this court held that ERISA plan administrators had abused their discretion by not according weight to subjective complaints of pain.  In those cases, however, unlike Spenrath's, the complaints were corroborated by objective medical evidence, *Schully*, 380 F. App'x. at 438-39, or documented in medical reports, *Audino* 129 F. App'x. at 885.

Spenrath argues that Guardian's failure to specifically acknowledge her subjective complaints in its final denial letter is an abuse of discretion.  We have never so held.[1]  The record in this case exceeds seven hundred pages, and it would be impractical to require the plan administrator to mention each piece of evidence it considered in reaching its conclusion.  In any event, Guardian did consider the subjective evidence.  Guardian asked the independent medical specialists on the MDR panel to determine whether there was a disparity between objective findings and Spenrath's subjective complaints.  All three members of the panel found discrepancies.  Guardian also states in its denial letters that it twice reviewed the entire record, which, of course, contained the subjective evidence of Spenrath's seizures.  Guardian did not abuse its discretion.

---

[1] In *Corry, supra,* this court determined that the mention of subjective evidence in the final rejection letter demonstrated that the administrator had considered the evidence. 499 F.3d at 399-400.  *Corry* did not hold that mentioning the subjective evidence in the final rejection letter was *required.*

## III.    Expert Opinions.

Spenrath contends that Guardian abused its discretion by relying on expert opinions that misstated or mischaracterized the evidence.  Perhaps an administrator's reliance on erroneous medical opinions may be an abuse of discretion, particularly where the erroneous opinion is the primary basis upon which the administrator denied a claim.  See, *e.g.*, *Audino*, 124 F. App'x at 884 (rejecting the conclusion of an administrator that relied on a medical opinion that misstated the content of the record); *Martin v. SVC Disability Income Plan*, 257 F. App'x. 751, 754-55 (5th Cir. 2007) (rejecting claim administrator's reliance on medical opinion that ignored testing conducted by other physicians); *Scheueurmann v. Unum Life Ins. Co. of Am.*, 384 F. App'x. 422 (5th Cir. 2010) (per curiam) (rejecting administrator's reliance on a medical report that misread the claimant's MRI and misstated the number of back surgeries he had undergone).  None of the alleged errors in the expert testimony in this case undermine Guardian's ultimate conclusion or affect the substantial nature of the evidence in its support.

Spenrath first asserts that Dr. Jares, the neurologist on the MDR panel, erroneously concluded that there was only one witnessed seizure.  The argument is based on Dr. Jares's statement that "[t]he diagnosis of seizures is a clinical diagnosis based upon the claimant's history and eye witnessed observation."  Dr. Hertzberg, another of the MDR experts, stated in his report that "Dr. Jares noted that there had been no eyewitness to claimant's seizures aside from the therapist who noted an episode in June 2008."  Dr. Jares's full opinion demonstrates, however, that he was aware that Spenrath alleged many seizure-like episodes, and that he considered the statements of eyewitnesses.  In any event, the number of eyewitness accounts does not undermine Dr. Jares's conclusion that there was no medical documentation to support the treating physician's diagnosis.

No. 13-20196

Spenrath also criticizes Dr. Jares's statement that "Dr. Diteresa's (sic) documentation is quite limited, but he did mention on occasion that [Spenrath] did have an occasional seizure here and there." Spenrath claims that Dr. Jares improperly characterized the occurrence of the seizures as "occasional," but, in the period at issue, Spenrath can point to only four instances where Dr. DiTeresa's treatment notes mentioned seizures. Dr. DiTeresa did repeatedly identify a seizure disorder on patient visit forms, but merely relisting a diagnosis from a previous visit is not evidence of additional seizures. Dr. Jares's characterization was accurate.

Spenrath next criticizes Guardian's reliance on the opinion of Dr. Hertzberg. Spenrath argues that Dr. Hertzberg knew of the inaccuracies in Dr. Jares's report and failed to correct them, misstated evidence of a neurological disorder, misstated the reasons for the decreased frequency of Spenrath's visits to her therapist, and misstated the record concerning Spenrath's functional limitations. These arguments are all without merit.

As has been discussed, any alleged inaccuracies in Dr. Jares's report were minor, and Dr. Hertzberg was under no obligation to correct them. Dr. Hertzberg concluded that Spenrath's condition was not neurological because there was no documentation or objective evidence of a neurological disorder. Spenrath points to no objective evidence that contradicts Dr. Hertzberg's conclusion. Dr. Hertzberg correctly stated that Spenrath's therapist cut down on sessions because Spenrath appeared to her therapist to be more emotionally stable. Dr. Hertzberg also stated that there was no documentation that Spenrath had any cognitive difficulties with concentration, memory, or focus. Spenrath contends that his statement conflicts with the opinions of Spenrath's doctor and therapist. In context, it is likely that Dr. Hertzberg was referring to a lack of medical testing documenting Spenrath's condition. Even if his statement was inaccurately

phrased, Dr. Hertzberg personally spoke with Spenrath's therapist and was aware of all of the evidence in the record.

In the face of conflicting opinions, Guardian gave more weight to the conclusions of the independent experts than to Spenrath's primary care physician and therapist.  Doing so was not arbitrary and capricious, and there was substantial evidence supporting Guardian's decision.  *See Corry*, 499 F.3d at 401; *Anderson*, 619 F.3d at 515.

Finally, Spenrath argues that Guardian's failure specifically to identify her symptoms and how they affect her ability to perform her job was an abuse of discretion.  She cites the non-precedential decision in *Audino* in support of her assertion.  In *Audino*, the medical expert ignored relevant subjective and objective evidence corroborating the claimant's complaints and therefore neglected to determine the effect of her condition on her ability to perform her job.  129 F. App'x. at 884-85.  Here, the medical experts did not ignore relevant evidence, and they considered how Spenrath's limitations would affect her ability to perform her occupation.  There is no independent requirement that plan administrators list a claimant's occupational responsibilities.  The experts concluded on the basis of the entire record that there was insufficient evidence to substantiate Spenrath's disability claim.  Guardian credited the experts' opinions and denied Spenrath's claim based on substantial evidence.  This was not an abuse of discretion.

## IV.    Attorney's Fees.

In her initial brief, Spenrath does not challenge the award of attorney's fees below, but merely asks for an award of attorney's fees in her favor.  Accordingly, she has waived any argument regarding the appropriateness of the district court's grant of attorney's fees to Guardian in this case.  *Valle v. City of Hou.*, 613 F.3d 536, 544 n.5 (5th Cir. 2010) (argument is waived if not raised in a party's opening brief).

Guardian has also requested the attorney's fees it has incurred on appeal under 29 U.S.C. § 1132(g). An award of attorney's fees on appeal is discretionary, *Hogan v. Kraft Foods*, 969 F.2d 142, 146 (5th Cir. 1992), and a "fees claimant must show some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010). Guardian has succeeded on the merits, and given the weak nature of Spenrath's arguments on appeal and her failure to object, we conclude that Guardian is entitled to an award of $6,000.00 as appellate attorney's fees.

For the foregoing reasons, the judgment of the district court is **AFFIRMED; Attorney's Fees Awarded.**