THE COUNTY OF DU PAGE, Plaintiff and Counterdefendant-Appellee, v. LAKE STREET SPA, INC., Defendant and Counterplaintiff-Appellant (Warren J. Wright, Indiv. and d/b/a Lake Street Spa, Inc., Defendant and Counterplaintiff; The Trust Beneficiary(ies) of La Salle National Bank Association Trust No. 1347, Defendants).—THE COUNTY OF DU PAGE, Plaintiff and Counterdefendant-Appellee, v. HOT SHOTS ON NORTH AVENUE, INC., Defendant and Counterplaintiff-Appellant (Anton Family, Inc., Indiv. and as the Trust Beneficiaries of Suburban Bank and Trust Trust No. 1275, Defendants).—THOMAS BOGAERT *et al.*, Plaintiffs and Defendants-Appellants, v. THE COUNTY OF DU PAGE, Defendant and Plaintiff-Appellee (Bridget Weik, Plaintiff and Defendant).

Second District    Nos. 2—08—1078, 2—08—1079, 2—08—1080 cons.

Opinion filed October 2, 2009.

Ronald G. Zamarin, of Law Offices of Ronald G. Zamarin, of Palatine, for appellants.

Joseph E. Birkett, State's Attorney, of Wheaton (Lisa Anne Hoffman and Anthony E. Hayman, Assistant State's Attorneys, of counsel), for appellee.

JUSTICE O'MALLEY delivered the opinion of the court:

This consolidated appeal presents the next step in the ongoing first amendment challenge to the validity of Du Page County's zoning codes regulating adult expression, which we first explored in *County of Du Page v. Hot Shots on North Avenue, Inc.*, Nos. 2—05—0069, 2—05—0072 cons. (2006) (unpublished order under Supreme Court Rule 23). This time, defendants Warren J. Wright, individually and doing business as Lake Street Spa, Inc., Lake Street Spa, Inc., and the beneficiary or beneficiaries of La Salle Bank National Association Trust No. 1347 (collectively Lake Street Spa or the Lake Street Spa defendants) (appeal No. 2—08—1078); defendants Hot Shots on North Avenue, Inc., and Anton Family, Inc., individually and as beneficiaries of Suburban Bank & Trust Trust No. 1275 (collectively Hot Shots or the Hot Shots defendants) (appeal No. 2—08—1079); plaintiffs Bridget Weik, Thomas Bogaert, and Fantasy Forum, Inc. (collectively Fantasy or the Fantasy plaintiffs) (appeal No. 2—08—1080); and the County of Du Page (County) bring the issue of when the determination should be made as to whether a zoning ordinance leaves reasonable avenues for continued permitted expression by the businesses affected by the ordinance. In the trial courts, the County filed motions for summary judgment, arguing that the determination should be made as of the effective date of the challenged ordinance. In *Hot Shots*, slip op. at 17, we stated in *dictum* that the determination should be made as of the date of the pertinent challenge (and Fantasy, Lake Street Spa, and Hot Shots advocated that position on the motions below). The trial courts agreed with the County, holding that case law subsequent to that on which we relied in *Hot Shots* trended away from our *dictum* and toward the County's position. Fantasy, Lake Street Spa, and Hot Shots sought and received permission to bring interlocutory appeals urging us to judge the validity of a zoning ordinance as of the date it was challenged. We agree with Fantasy, Lake Street Spa, and Hot Shots, and, for the reasons below, we reverse and remand.

# I. BACKGROUND

## A. The County's Zoning Ordinance

In 1986, the County enacted zoning regulations that limited the location of adult business uses to industrial-zoned districts (I—1 or I—2). In addition, the zoning regulations required that adult business uses be 500 feet from certain protected land uses (and today, the requirement is 500 feet to 1,000 feet, depending on the protected use). The County has, from time to time, amended the list of protected land uses by enacting text amendments to the zoning ordinance. At all relevant times, however, Fantasy, Lake Street Spa, and Hot Shots have been located in "B" (business-zoned) districts, and they have been located less than 500 feet from residential-zoned properties. According to the County, none of the three adult business uses has ever operated in conformity with the County's zoning ordinance.

The zoning regime at issue in each of the three cases was finalized and adopted in December 2001 under the text amendment T—3—01. Lake Street Spa and Hot Shots began operating after the adoption of T—3—01; Fantasy began operating before the adoption of T—3—01.

## B. Appeal No. 2—08—1080

Fantasy began operating by 1999 (the exact date is not in the record) in an unincorporated portion of Du Page County. Fantasy's property adjoins several residential properties and is within 500 feet of a number of residential properties.

After Fantasy began operating, the County filed two ordinance-violation complaints, No. 99—OV—3111 and No. 99—OV—3361. The County's complaints allege that Fantasy operates an "adult business" use, as that term is defined in the County's zoning code. See *Hot Shots*, slip op. at 2-3. Further, the County alleges that Fantasy is located on a parcel that is and always has been in noncompliance with the locational restrictions set forth in the zoning code. The County alleges that, when Fantasy originally opened for business, its location violated applicable zoning regulations. The County alleges that T—3—01 does not require Fantasy to relocate; rather, Fantasy should be closed down.

After the County filed its initial complaints, the Fantasy plaintiffs filed their own suit against the County, alleging that the zoning provisions were unconstitutional under *City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 89 L. Ed. 2d 29, 106 S. Ct. 925 (1986). In particular, Fantasy alleged that T—3—01 continued the original defects. The trial court consolidated the County's "OV" (ordinance violation) cases with Fantasy's claim against the County, and the parties have, from time to time, amended their pleadings.

Currently, the County's second amended complaint seeks to enjoin Fantasy from operating an adult business use and to assess a fine for violating the zoning code. Fantasy answered the second amended complaint and filed an affirmative defense, which also alleged that the zoning provisions were unconstitutional. We note that the arguments raised in Fantasy's affirmative defense are substantially the same as those raised in its own claim.

We also note that Bridget Weik is no longer a party to this action, and Fantasy is now believed to be operating under the name "O'Hare Girls." We will nevertheless continue to refer to the parties opposing the County's zoning provisions as Fantasy or the Fantasy plaintiffs. Additionally, we note that this matter is before Judge Wheaton in the circuit court of Du Page County.

## C. Appeal No. 2—08—1078

On May 7, 2003, the County filed the instant action against the Lake Street Spa defendants, alleging, among other things, that the Lake Street Spa defendants operate an adult business use in violation of the County's zoning code. Lake Street Spa filed a counterclaim and two affirmative defenses alleging that the County's zoning ordinance unconstitutionally restricts adult expression protected under the first amendment. While the County's action named the owners of the subject property as defendants, the property owners did not join Lake Street Spa's counterclaim and affirmative defenses.

The County filed a motion to dismiss Lake Street Spa's counterclaim and affirmative defenses, pursuant to section 2—615 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 2004)). The trial court granted the County's motion to dismiss, but we reversed and remanded in *Hot Shots*, holding that Lake Street Spa's allegations of unconstitutional restrictions on protected adult expression stated claims on which relief could be granted.

In 2007, after the remand, the subject property was sold. The current owner of the subject property was joined as a party defendant while the former property owners were dismissed. Likewise, Wright was dismissed from the action. The current property owner has not asserted its own counterclaim or affirmative defenses and has not joined with Lake Street Spa's counterclaim or affirmative defenses. The matter is now before Judge Popejoy.

## D. Appeal No. 2—08—1079

On September 12, 2003, the County filed its action against the Hot Shots defendants. As with the other two cases, the County alleged that the Hot Shots defendants operated an adult business use in violation of the zoning ordinance's locational regulations. The Hot Shots

defendants also filed a counterclaim and two affirmative defenses alleging that the County's zoning ordinance unconstitutionally restricted protected adult expression.

The County moved to dismiss Hot Shots' counterclaim and affirmative defenses, pursuant to section 2—615 of the Code. The trial court granted the County's motion and we reversed and remanded in *Hot Shots*.

As in the Lake Street case, the owners have not filed their own counterclaims or affirmative defenses and have not joined Hot Shots' counterclaim or affirmative defenses. The matter is currently assigned to Judge Popejoy in the trial court.

### E. Procedure Following Remand

In February 2007, the County filed two separate motions for summary judgment in the Fantasy case. The motion at issue in this appeal was directed against Fantasy's claim and affirmative defenses. In December 2007, the County filed motions for summary judgment in the remaining cases. The motions at issue here were also directed against the counterclaims and affirmative defenses of Lake Street Spa and Hot Shots.

In August 2008, Judge Popejoy was informed that the motions for summary judgment in the Lake Street Spa and Hot Shots cases were identical to the relevant motion for summary judgment in the Fantasy case. Judge Popejoy informed the parties that he would defer to Judge Wheaton's ruling in the Fantasy case, which he would then adopt without independently considering the merits of the motions in the Lake Street Spa and Hot Shots cases.[1]

In the motions for summary judgment, the County maintained that within the County's jurisdiction there are a sufficient number of available sites to which an adult business use could relocate. The County argued that the sufficiency of the sites should be considered as of the time of the challenged provision's enactment. The County also prepared exhibits purporting to show the availability of alternate sites as of both December 2001 (when T—3—01 was enacted) and January 2007 (when the motion for summary judgment was filed in the Fantasy case).

The parties agreed that they would proceed on the narrow issue of when the sufficiency of the alternate sites should be considered, *i.e.*, as of the time of enactment or the time of the challenge. On October 31, 2008, Judge Wheaton granted the County's motion in the Fantasy case. Judge Wheaton held that the sufficiency of alternative sites

---

[1]Neither party has raised any issue as to this procedure and we comment on it no further.

should be examined as of the time of enactment. Judge Wheaton certified the order for permissive interlocutory appeal, and, as he promised, Judge Popejoy entered the same order and certification in the Lake Street Spa and Hot Shots cases.[2] The parties timely applied to us for leave to appeal, which we granted.

## II. ANALYSIS

On appeal, the narrow issue presented to us is whether the court must consider the alternative sites available for adult expression as of the time the zoning provision was challenged or as of the time the zoning provision was enacted. While this matter comes before us in the posture of a grant of summary judgment, we note that there do not appear to have been any factual submissions (affidavits, depositions, or the like) attached to the motions for summary judgment (at least the parties do not refer to any factual development relating to the issue at hand and none is evident in the records on appeal). Nevertheless, the issue presented is solely a question of law and our review is *de novo*. *United States Steel Corp. v. Illinois Pollution Control Board*, 384 Ill. App. 3d 457, 461 (2008) (legal issue reviewed *de novo* on appeal); *ESL Delivery Services Co. v. Delivery Network, Inc.*, 384 Ill. App. 3d 451, 454 (2008) (ruling on summary judgment is reviewed *de novo*).

We first set the stage by reviewing the basis of Fantasy's, Lake Street Spa's, and Hot Shots' counterclaims and affirmative defenses. In order to raise a claim that a municipality's zoning ordinance unconstitutionally restricts protected adult expression, we look first to *Renton*, 475 U.S. 41, 89 L. Ed. 2d 29, 106 S. Ct. 925. In that case, the city of Renton enacted an ordinance that imposed separation requirements between various zoning uses and adult motion picture theaters. *Renton*, 475 U.S. at 44, 89 L. Ed. 2d at 35-36, 106 S. Ct. at 927. In determining whether the Renton zoning ordinance passed constitutional muster, the Supreme Court stated that "[t]he appropriate inquiry *** is whether the Renton ordinance is designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication." *Renton*, 475 U.S. at 50, 89 L. Ed. 2d at 39, 106 S. Ct. at 930.[3] The Supreme Court held that curbing the deleterious secondary effects associated with adult uses, such as crime,

---

[2]Judge Popejoy did not otherwise consider the merits of the motions in the cases before him.

[3]We note that *Renton* supplies the phrase "alternative avenues of [adult] communication," which has morphed into the phrase, "alternative avenues of adult expression." This phrase appears to suggest that the alternative avenues would be between books and movies, say. The phrase is understood, however,

risks to public health and safety, lowered property values, and a loss in the quality of life, was a substantial governmental interest sufficient to justify the imposition of restraints on expression protected under the first amendment. *Renton*, 475 U.S. at 50, 89 L. Ed. 2d at 39, 106 S. Ct. at 930. The Supreme Court also concluded that, in the city of Renton, there was ample real estate available, more than 5% of the total land area in the city, that could be used for alternative locations for protected adult expression. *Renton*, 475 U.S. at 53, 89 L. Ed. 2d at 41, 106 S. Ct. at 932. Thus, from *Renton* comes the inquiry into alternative locations for the adult expression at issue.

*Renton* also leads into the issue of timing. In *Hot Shots*, we looked to *David Vincent, Inc. v. Broward County, Florida*, 200 F.3d 1325 (11th Cir. 2000), for guidance in how to conduct the *Renton* inquiry into the availability of alternative locations for adult expression. In *David Vincent*, adult bookstores were attacking zoning and licensing ordinances as impermissibly restricting permitted adult expression. *David Vincent*, 200 F.3d at 1328-29. In the case of *International Eateries of America, Inc. v. Broward County, Florida*, 941 F.2d 1157 (11th Cir. 1991), the Eleventh Circuit had determined that the predecessor to the ordinance at issue in *David Vincent* was facially valid. Later, in *David Vincent*, the same court determined that, despite the changes in circumstances (such as the shrinking land area of the county), the *International Eateries* case still controlled the resolution of the facial validity of the ordinance. *David Vincent*, 200 F.3d at 1332. In looking to alternative locations for protected adult expression, the court noted that there were seven to nine sites available for adult businesses to use (down from 26 sites in the *International Eateries* case) but noted that the ratio of available sites to square miles in unincorporated Broward County had remained the same as in the *International Eateries* case. *David Vincent*, 200 F.3d at 1336. Also of interest was the fact that, even though the court followed the holding in the *International Eateries* case, it appeared to conduct a new and independent inquiry into the number of sites available for adult businesses. *David Vincent*, 200 F.3d at 1335-36.

In *Hot Shots*, we noted that the factual circumstances in Du Page County were similar to those in Broward County in *David Vincent*. We stated in *dictum*:

> "While a similar situation obtains here [in Du Page County] as in Broward County, this situation affords no basis by which to dismiss [Lake Street Spa's and Hot Shots'] counterclaims and affirmative

---

to mean alternative locations or sites for the adult expression at issue. We will endeavor to use this more precise language instead of the usual formulation.

> defenses. Obviously, at the time [the County's] ordinance was enacted, the land area of the county was different (and larger) than at the time [Lake Street Spa and Hot Shots] raised their challenge to the ordinance here. This fact will be accommodated, however, by the trial court considering whether, at the time of the challenge, sufficient alternative avenues of communication remain under the ordinance in light of the current (at the time of the challenge here) land area of the unincorporated portions of the County. See *David Vincent*, 200 F.3d at 1336-37. [The County's] concern that it must forever maintain a fixed number of sites on which an adult business could be allowed to locate is not mandated under the applicable authority; indeed, such a concern is not borne out by the applicable authority." *Hot Shots*, slip op. at 17-18.

Thus, from our reading of *David Vincent*, we indicated a belief that the inquiry into alternative locations for adult expression should be as of when the ordinance was challenged and not as of when the ordinance was enacted. We note, parenthetically, that often a challenge will be effectively at the same time an ordinance is enacted, because parties will often immediately challenge an unfavorable ordinance when it is enacted.

The trial court, Judge Wheaton (Judge Popejoy did not engage in any independent consideration of the merits), prompted by the County, held that cases subsequent to *David Vincent* suggested that the inquiry should be as of the time of enactment, thus removing the underpinnings of our *dictum* in *Hot Shots*. This is the first issue we must examine: whether the cases, *David Vincent* as well as the more recent ones, support the time an ordinance is enacted or the time it is challenged as the time to inquire whether an ordinance allows sufficient alternative locations for protected adult expression.

The County and the trial court relied on *TJS of New York, Inc. v. Town of Smithtown*, No. 03—CV—4407 (E.D.N.Y. May 18, 2008), *Bigg Wolf Discount Video Movie Sales, Inc. v. Montgomery County*, 256 F. Supp. 2d 385 (D. Md. 2003), and *Daytona Grand, Inc. v. City of Daytona Beach, Florida*, 490 F.3d 860 (11th Cir. 2007), to support their position that we should look at the time of enactment of the zoning ordinance in determining whether it offers adequate alternative locations for adult expression. *TJS* adopted the reasoning of *Bigg Wolf* in concluding that the time of enactment was the proper point to determine alternative locations. *Bigg Wolf* and *TJS*, quoting *Bigg Wolf*, stated:

> "Although many courts have not explicitly said so, most have logically analyzed the number of available sites in relation to the number of adult businesses that would need to relocate at the time the ordinance was passed. The situation will always be fluid, with

businesses moving in and out, and the courts should not be involved repeatedly with litigation determining the validity of a zoning ordinance. More importantly, if the reasonableness of alternative sites must be reassessed for each business at the time it decides to relocate, an incentive would be created for businesses to holdout [*sic*] and then to claim that there are no available sites after the other businesses have relocated or litigated. Such a situation not only puts enormous bargaining leverage in the hands of the last holdout, it is a nonsensical way to deal with zoning problems.

To the extent that it considers this question, the case law from other circuits supports this time-frame. 'The test is whether the restrictions allow for reasonable alternative avenues of communication *currently*, not whether they *always will allow* for reasonable alternative avenues of communication.' [Citation.] Even the Ninth Circuit, which has a more stringent requirement for adequate alternatives than this circuit, looks at the number of adult entertainment business[es] that must be relocated at the time that the new zoning regime takes effect. [Citation.] Most courts considering this question implicitly adopt this time frame and there are no cases that challenge it or demand that the test for available sites include safeguards for future change. [Citation.]" (Emphases in original.) *Bigg Wolf*, 256 F. Supp. 2d at 397; *TJS*, slip op. at ___, quoting *Bigg Wolf*, 256 F. Supp. 2d at 397.

*TJS* also quoted *Daytona Grand*:

" 'A new zoning regime must leave adult businesses with a "reasonable opportunity to relocate," and "the number of sites available for adult businesses under the new zoning regime must be greater than or equal to the number of adult businesses in existence at the time the new zoning regime takes effect." ' [Citation.]" (Emphasis omitted.) *TJS*, slip op. at ___, quoting *Daytona Grand*, 490 F.2d at 870.

These passages appear to indicate that the time of enactment is preferred for determining the availability of alternative locations for protected adult expression.

We are nevertheless concerned that something is being missed. In the *Bigg Wolf* passage quoted in *TJS*, we have difficulty reconciling the idea that a court should look at the historical time of passage of the new zoning ordinance with the operative language in the opinions, " '[t]he test is whether the restrictions [of the new zoning regime] allow for reasonable alternative avenues of communication *currently*.' " (Emphasis in original.) *TJS*, slip op. at ___, quoting *Bigg Wolf*, 256 F. Supp. 2d at 397. "Currently" does not mean "retrospectively" or "historically." Rather, it means "at present" (Webster's Third New International Dictionary 557 (1993)), or "now" (Webster's Third New

International Dictionary 1793 (1993) (definition of "presently")). Yet that is what *Bigg Wolf* and *TJS* hold: under the guise of "currently" evaluating whether the zoning regime offers reasonable alternative locations for adult expression, the *Bigg Wolf* and *TJS* courts will look to the past to make the evaluation: from a year-and-a-half in the past (*Bigg Wolf*, 256 F. Supp. 2d at 387, 389), to 10 years and more in the past (*TJS*, slip op. at ___, ___). And we note that the courts justify these historical forays by explaining that they are attempting to determine if the ordinance at issue "currently" provides alternative locations for expression.

This point is further underscored by considering the authority upon which *Bigg Wolf* and *TJS* relied: *The Ranch House, Inc. v. Amerson*, 146 F. Supp. 2d 1180 (N.D. Ala. 2001). In *Ranch House*, the court stated:

> "The First Amendment does not require legislatures to employ crystal balls or to engage clairvoyants in order to ensure that their statutes will, throughout time, be impervious to constitutional attack, nor does it require reviewing courts to exercise a 'sixth sense' to ensure that the statutes will, for all eternity, survive constitutional scrutiny. *** The test is whether the restrictions allow for reasonable alternative avenues of communication currently, not whether they always will allow for reasonable alternative avenues of communication. The Eleventh Circuit, by suggesting specific factors for courts to consider in this analysis, has tailored the test in prior cases to the specific characteristics of the locality in question. *** These specific factors recognize that each locale is different, and that, over time, each locale has changed and will continue to change. In light of such fluidity of circumstance, the fact that neither the Supreme Court nor the Eleventh Circuit has modified the test to include 'safeguards for future change' indicates that this court is to assess the reasonableness of the statute's restrictions and the availability of alternate avenues of communication *in the here-and-now*." (Emphasis in original.) *Ranch House*, 146 F. Supp. 2d at 1212-13.

*Ranch House* was clearly concerned with "the availability of alternate avenues of communication *in the here-and-now*," not in the past, and not projecting into the future. (Emphasis in original.) *Ranch House*, 146 F. Supp. 2d at 1213. *Bigg Wolf* relied on *Ranch House*, quoting it in support of its argument that the proper time to measure the availability of alternative sites for adult expression is at the time the zoning provision was enacted. *Bigg Wolf*, 256 F. Supp. 2d at 397 (" 'The test is whether the restrictions allow for reasonable alternative avenues of communication *currently*, not whether they *always will allow* for reasonable alternative avenues of communication' " (emphases

in original)), quoting *Ranch House*, 146 F. Supp. 2d at 1212. From that quote, *Bigg Wolf* inexplicably holds that "the court will consider the number of adequate sites relative to the number of adult entertainment businesses in place at the time the ordinance was passed." *Bigg Wolf*, 256 F. Supp. 2d at 397. Thus, the holding in *Bigg Wolf* (and *TJS*, which relies on *Bigg Wolf*) stems from a fundamental and inexplicable misreading and misapprehension of *Ranch House*. In turn, *Ranch House* derived its "here-and-now" emphasis from *David Vincent*. *Ranch House*, 146 F. Supp. 2d at 1212-13. Had *Bigg Wolf* read *David Vincent* as we do and as *Ranch House* did, and had it properly read *Ranch House*, then there would be no need to trace and explicate its holding (and likely no need for the current appeal).

Even in the absence of *Bigg Wolf*'s (and *TJS*'s) inexplicable misreadings of *Ranch House* and *David Vincent*, our analysis would not change. This is because, in addition to the significantly retrospective take on the idea of "currently," *Bigg Wolf* and *TJS* avoid the question presented, namely, whether the zoning regime currently (presently, now) provides sufficient alternative locations for adult expression. This can be seen in the following analysis. A municipality has the burden to enact a constitutional ordinance. *TJS*, slip op. at ___. For an ordinance encumbering adult expression with time, place, and manner restrictions to be constitutional, it must leave an equal or greater number of sites on which adult businesses may locate. *Daytona Grand*, 490 F.3d at 870. If the ordinance in question complies with the municipality's obligation to enact constitutional legislation, then, at the time of enactment, it will necessarily leave an equal or greater number of sites on which adult businesses may locate. However, the constitutionality of the zoning regime at issue presents a different question than whether there are currently sufficient alternative locations for adult expression available under it. *Bigg Wolf* and *TJS* compress the two questions into a single inquiry—whether the ordinance is constitutional—while the question of the *current* availability of alternative locations for adult expression goes unconsidered.

Our *dictum* in *Hot Shots* was engendered because the *David Vincent* court appeared to give consideration to each of the questions presented—was the ordinance constitutional when enacted, and were there currently sufficient alternative locations for communication? Indeed, in *David Vincent*, the court appears to have held that a 1991 decision (*International Eateries*) controlled the question of the constitutionality of the ordinance when enacted, and the court also considered the different question of the sufficiency of sites available for adult businesses at the time of the *David Vincent* suit. *David Vincent*, 200 F.3d at 1335. (We note that this reading of *David Vincent* is

bolstered by *Ranch House*, 146 F. Supp. 2d at 1212-13.) Thus, we posited in *Hot Shots* that the determination of whether there are sufficient alternative locations for adult expression should be made as of the time of the challenge. *Hot Shots*, slip op. at 17. In this way, the two questions are kept separate, and both can be considered, if necessary.

*Bigg Wolf* and *TJS* also express valid concerns with reviewing an ordinance placing time, place, and manner restrictions on adult expression as of the time of the challenge instead of the time of enactment. As noted above, *Bigg Wolf* and *TJS*, quoting *Bigg Wolf*, stated:

> "Although many courts have not explicitly said so, most have logically analyzed the number of available sites in relation to the number of adult businesses that would need to relocate at the time the ordinance was passed. The situation will always be fluid, with businesses moving in and out, and the courts should not be involved repeatedly with litigation determining the validity of a zoning ordinance. More importantly, if the reasonableness of alternative sites must be reassessed for each business at the time it decides to relocate, an incentive would be created for businesses to holdout [*sic*] and then to claim that there are no available sites after the other businesses had relocated or litigated. Such a situation not only puts enormous bargaining leverage in the hands of the last holdout, it is a nonsensical way to deal with zoning problems."
> *Bigg Wolf*, 256 F. Supp. 2d at 397; *TJS*, slip op. at ___, quoting *Bigg Wolf*, 256 F. Supp. 2d at 397.

While we acknowledge the concern, we believe it to be speculative. An intransigent holdout should not receive better terms or increased bargaining leverage; rather, the holdout should be required to sleep in the bed its actions have made. If, for example, the holdout has persisted until there are no more sites available to accommodate an adult business, then it would be the holdout's actions that have suppressed adult expression, not the municipality's actions. The constitution is not offended if the state is not the actor causing the diminishment to the expression. See *David Vincent*, 200 F.3d at 1335 ("the [constitution] is not concerned with restraints that are not imposed by the government itself"). Further, in *Bigg Wolf*, *TJS*, and here, there is no indication that any adult business was attempting to gain a more favorable position by holding out on the relocation needed for compliance with a zoning ordinance. Last, we weigh the speculative difficulty of having to reevaluate the zoning ordinance upon each challenge with the clear and present problem of ignoring the issue of whether there are currently (presently) sufficient alternative locations for adult expression in favor of the issue of whether the zoning ordinance was constitutional as of the historical date it was enacted. We believe that

the balance is better set where both questions of constitutional magnitude are acknowledged and addressed, and we leave the speculative question to take care of itself only upon the situation actually arising.

In addition, the three cases on which the County relies present other problems. *Bigg Wolf* and *TJS* are cases from federal district courts. Holdings of federal district courts are not precedential or binding on this court. See *Tortoriello v. Gerald Nissan of North Aurora, Inc.*, 379 Ill. App. 3d 214, 224 (2008) (federal district court decisions are neither binding nor precedential). This is especially true where the decision is unreported, like *TJS*. *Burnette v. Stroger*, 389 Ill. App. 3d 321, 329 (2009), quoting *Lyons v. Ryan*, 324 Ill. App. 3d 1094, 1107 n.11 (2001) (unreported federal court orders are not any kind of authority before Illinois courts). We acknowledge that federal district court cases may provide guidance to state courts. *Tortoriello*, 379 Ill. App. 3d at 224. However, the issue is not so much the effect that *Bigg Wolf* and *TJS* have on this court as on other federal courts. The federal district court is inferior to the federal circuit court of appeals; a decision of a federal district court does not bind or create precedent for the federal circuit court of appeals, but a decision of a federal circuit court of appeals is both binding and precedential on the federal district court. Thus, the decisions in *Bigg Wolf* and *TJS*, to the extent that they differ from the decision in *David Vincent*, do not create precedents in interpreting the first amendment. It is *David Vincent*, a federal circuit court of appeals case, that is precedential.

The remaining case, *Daytona Grand*, is an Eleventh Circuit case, the same court that decided *David Vincent*. However, *Daytona Grand* does not involve the timing of the determination of alternative locations for adult expression. Instead, it considers whether the alternative sites identified as being suitable for adult businesses are actually available for first amendment purposes. *Daytona Grand*, 490 F.3d at 871-72. Thus, *Daytona Grand* is inapposite to the issue here.

■ Having reviewed *Hot Shots*, *David Vincent*, and the cases on which the trial court and the County relied, *Bigg Wolf*, *TJS*, and *Daytona Grand*, we conclude that the trial court erred in determining that *Bigg Wolf*, *TJS*, and *Daytona Grand* represented a movement away from *David Vincent* and our *dictum* in *Hot Shots*. Instead, our review of the pertinent authority convinces us that the *dictum* in *Hot Shots* is the correct position: evaluating the sufficiency of alternative locations for adult expression should be done as of the time of the challenge to the ordinance (*i.e.*, the instigation of the lawsuit) and not the time of the enactment of the ordinance.

Turning to the County's particular arguments, we have already extensively addressed the County's reliance on *Bigg Wolf* and *TJS*. We need not further consider them, as the County argues only that they stand for the proposition that the determination of the sufficiency of alternative sites for adult expression should be as of the time of the ordinance's enactment and that they represent a trend away from *David Vincent* as this court interpreted it.

The County next argues that *Hot Shots* should not be considered the law of the case, because the portion of the *Hot Shots* disposition pertinent here was *dictum* and *Hot Shots* was a nonprecedential Rule 23 (166 Ill. 2d R. 23) decision. We have already noted that the relevant passage in *Hot Shots* was *dictum*. Nevertheless, as *dictum*, it is still persuasive authority.

As to the argument that, in essentially the same case, a previous Rule 23 order cannot be cited, the County is flatly in error. It clearly represents the law of the case, which is a permissible reason for citing it. 166 Ill. 2d R. 23. In addition, the County tries to suggest that the procedural posture of *Hot Shots* was so different from the instant case that there is no overlap between *Hot Shots* and this case. We disagree. The County correctly notes that *Hot Shots* resolved the question of the pleading requirements necessary to state a counterclaim that a zoning regulation improperly infringed upon an adult business's protected adult expression. This case involves the summary judgment on the properly stated counterclaims. The motions for summary judgment at issue here, however, presented no factual matters and included no affidavits, deposition excerpts, or other matters of fact; instead, the motions sought to decide only the matters on the pleadings as they stood. We do not see that there is a particularly wide gulf between the procedural postures of this case and *Hot Shots*.

Nevertheless, the County attempts to argue that "the doctrine of 'the law of the case' applies to the law, and not to the facts," citing *Bradley v. Howard Hembrough Volkswagen, Inc.*, 89 Ill. App. 3d 121, 126 (1980) (Craven, J., dissenting) ("The doctrine of law of the case applies to law, not to facts"). Unfortunately for the County, it was the dissent that stated that proposition, not the majority, and it is not the holding in that case. Rather, *Bradley* holds that the trial court is bound by the views of law expressed in the appellate court's resolution of the case, unless the facts presented require differently. *Bradley*, 89 Ill. App. 3d at 124; see also *People v. Patterson*, 154 Ill. 2d 414, 468 (1992) (noting *Bradley*'s holding is that the "court is bound by views of law in its previous opinion in a case, unless the facts presented require a different interpretation").

In *Bradley*, the appellate court held, in a Rule 23 order, that the trial court's ruling on a particular point was against the manifest weight of the evidence, and it reversed and remanded the case for a new trial. The parties stipulated to the evidence and to allow the second trial court (a different judge) to read the transcripts of the first trial. The second trial court made the same determination on the particular point as did the first trial court. *Bradley*, 89 Ill. App. 3d at 123. The appellate court held that its determination on the particular point in the Rule 23 order foreclosed the second trial court from making the same finding as did the first trial court. *Bradley*, 89 Ill. App. 3d at 124. Thus, *Bradley* actually holds that appellate determinations on factual matters are equally the law of the case as are its determinations on legal issues, unless facts presented later require a different application of the pertinent legal rules. *Bradley*, 89 Ill. App. 3d at 124. The County's attempt to claim that the law of the case doctrine is inapplicable here is contradicted by the very authority the County cites to support its argument. Accordingly, we reject the County's argument.

■ If the law of the case doctrine means that our conclusions from *Hot Shots* should have bound the trial court, then the *Hot Shots dictum* should also have bound the trial court. But rather than arguing law of the case, the County more forcefully should have argued that the *Hot Shots dictum* did not need to be followed, although that argument would have been unavailing as well. "*Obiter dictum* refers to a remark or expression of opinion that a court uttered as an aside, and is generally not binding authority or precedent within the *stare decisis* rule." *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 277 (2009). On the other hand, judicial *dictum* is " 'an expression of opinion upon a point in a case argued by counsel *and deliberately passed upon by the court*, though not essential to the disposition of the cause.' " (Emphasis in original.) *Exelon Corp.*, 234 Ill. 2d at 277-78, quoting *Cates v. Cates*, 156 Ill. 2d 76, 80 (1993). Judicial *dictum*, unlike *obiter dictum*, " 'is entitled to much weight and should be followed unless [it is] found to be erroneous.' " *Exelon Corp.*, 234 Ill. 2d at 278, quoting *Cates*, 156 Ill. 2d at 80. In *Hot Shots*, the pertinent passage was judicial *dictum*. The County had expressed doubt about the defendants' contention because the land in the county was shrinking. We cited *David Vincent* and then noted, in response to the County's argument, that the fact that the County was shrinking could be accommodated by considering the alternative sites as of the time of the challenge to the ordinance. *Hot Shots*, slip op. at 17. Having deliberately passed upon a point argued by the parties, the *dictum* in *Hot Shots* was judicial *dictum* that should have been viewed as binding. See *Exelon Corp.*, 234 Ill. 2d at 278.

■ Thus, our view in *Hot Shots* as to the proper time to determine the sufficiency of the alternative sites for adult expression was entitled to significantly more deference than the trial court displayed, and it required significantly more justification than the trial court produced to dispense with it. Moreover, as we determined above, the cases relied upon by the trial court and the County, *Bigg Wolf*, *TJS*, and *Daytona Grand*, are themselves problematical, as a careful and thorough consideration of them should have revealed.

The County attempts to distinguish the various cases cited by Fantasy, Lake Street Spa, and Hot Shots. The County argues that many of the supporting cases involved municipal territory, rather than county territory that was shrinking. While this may be true, we note that *TJS*, upon which the County chiefly relies, involved territory in the town of Smithtown, which was not a county with shrinking territory. Under the County's rationale, *TJS* is likewise distinguishable, because the municipal territory in Smithtown would not have shrunk, making an analysis as of the time of the challenge appear identical to one as of the time of the ordinance's enactment, for purposes of deciding the appropriate time to review the availability of alternative sites for adult expression.

The County also notes that, in its view, most of the challenges to the ordinances arose at pretty much the same time as the enactment of the ordinances. We find that the County has misstated the time periods. For example, the County asserts that, in *Fly Fish, Inc. v. City of Cocoa Beach*, 337 F.3d 1301, 1303 (11th Cir. 2003), the ordinance was challenged the same year that the adult business was threatened with relocation. This is not, however, the time of enactment of the ordinance, which was in 1999, with the challenge being raised in 2002 (and the time of relocation being September 2004). *Fly Fish*, 337 F.3d at 1303. Similarly, the County noted that in *Bigg Wolf*, the challenge to the ordinance was made "weeks after the amortization period expired." This is not, however, the "time of enactment of the ordinance." In *Bigg Wolf*, the challenge was made 18 months after the ordinance was enacted. *Bigg Wolf*, 256 F. Supp. 2d at 387-89. The County cites to *Red-Eyed Jack, Inc. v. City of Daytona Beach*, 322 F. Supp. 2d 1361, 1364 (M.D. Fla. 2004), contending that the challenge was made two months after zoning amendments compelled adult businesses to relocate. However, the challenged ordinance was enacted in 1993, the challenge was filed in April 2001, the ordinance was amended in September 2001, and the court looked at the number of businesses affected and the sites available for them as of 2003. *Red-Eyed Jack*, 322 F. Supp. 2d at 1363-65. While we accept the argument that, with municipalities, the conditions at the time of the enactment of a chal-

lenged ordinance and the conditions at the time of a challenge to the ordinance are likely to be the same because municipalities (unlike counties) generally will not lose territory, as municipalities within a county annex the county's unincorporated land, we nevertheless find unavailing the County's attempt to distinguish much of the authority on the basis that the challenge coincided with the enactment of the ordinance.

The County also attempts to distinguish some of the authority because the adult businesses were lawfully on their property before changes to the zoning ordinances required them to relocate. The issue, though, is that the ordinance changed, making the properties nonconforming and requiring the adult businesses to relocate, so they would appear to be in the same position as Fantasy, Lake Street Spa, and Hot Shots, whose properties are currently nonconforming and who (potentially) have to relocate to conforming sites. We fail to see how this might render such authority inapposite.

The County next argues that a *Renton* analysis must accommodate a county with shrinking land area. The County is concerned that, while the zoning ordinance was valid when enacted, the loss of land area might be such that the then-available sites would be annexed into municipalities, causing the County to have insufficient sites available for use by adult businesses when the ordinance is challenged. This argument is speculative at this point, because there is no indication in the record that, at the time of enactment, the County had a certain number of available sites for adult businesses and, at the time of the challenge, the number available was less than the demand for them. In *Hot Shots*, in response to the County's concern that it would have to maintain a fixed number of sites for adult businesses to locate, we stated that the County's "concern that it must forever maintain a fixed number of sites on which an adult business could be allowed to locate is not mandated under the applicable authority; indeed, such a concern is not borne out by the applicable authority." *Hot Shots*, slip op. at 18. We reiterate that, to the extent that the County is again raising this concern, applicable authority does not require it to maintain a fixed number of sites, especially if the County's actions are not responsible for the loss of suitable sites. As stated in *David Vincent*, the constitution is not concerned with restraints on expression that are not imposed by the government. *David Vincent*, 200 F.3d at 1335. While we are not passing on the issue, we believe that it follows that if the municipalities within the County annex the County's land, the County would not be responsible for the loss of suitable sites on which adult businesses could locate. Moreover, that is precisely the inquiry that would have to be undertaken, namely, whether the County

colluded with a municipality to eliminate suitable sites for adult expression. That situation, however, is not before us at this time. We are confident that, should the situation arise, a court will be able to appropriately balance the unique situation of the County's shrinking land base and the constitutional requirements applicable to protected adult expression.

The County next argues that the command in *Renton*, that adult businesses should not be favored but should remain on an equal footing with other prospective purchasers and lessees in the real estate market, should be followed. See *Renton*, 475 U.S. at 54, 89 L. Ed. 2d at 42, 106 S. Ct. at 932. It worries that if Fantasy, Lake Street Spa, and Hot Shots prevail, it would become obligated to continually assess the sufficiency of the sites available for adult businesses along with being required to designate new sites to replace sites lost due to annexation or other developments carried out by municipalities. We believe that the concern is unfounded. *Renton* cautions against favoring adult businesses, but ensures that they are on the same footing as any other prospective purchaser or lessee in the real estate market. *Renton*, 475 U.S. at 54, 89 L. Ed. 2d at 42, 106 S. Ct. at 932. Likewise, only the County's actions are relevant in a challenge to the constitutionality of a zoning ordinance on the ground that it impermissibly restricts protected adult expression. See *David Vincent*, 200 F.3d at 1335. If the County's territory is shrinking and the County is not acting to cause the loss of territory, then it would appear that the County would not be responsible under the first amendment for the loss of sites suitable for adult businesses. See *David Vincent*, 200 F.3d at 1335. This *dictum*, however, is speculative and we are aware of no authority that has actually considered the question. Nevertheless, we remain confident that, should the situation arise, a court will be able to appropriately balance the unique situation of the County's shrinking land base and the constitutional requirements applicable to protected adult expression.

Last, the County argues that the recent case of *Independence News, Inc. v. City of Charlotte*, 568 F.3d 148 (4th Cir. 2009), endorses its position that the time of enactment should be the measuring point to determine whether a zoning regime offers sufficient sites for adult expression. We note that if we were to find *Independence News* indistinguishable, then it would rebut much of our discussion above about *David Vincent* controlling here rather than the cases cited by the County. Accordingly, we will carefully evaluate *Independence News*.

In *Independence News*, the adult businesses conceded that the zoning ordinance was constitutional when enacted and that the city

reasonably could have passed the ordinance to combat and forestall any secondary effects attributable to adult businesses; but, during the nine years of its enforcement (*i.e.*, during the amortization period), there had been no actual secondary effects (increased crime, decreased property values) attributable to the adult businesses. *Independence News*, 568 F.3d at 155. The adult businesses argued that the zoning regime was unconstitutional as applied, because the actual experience regarding secondary effects refuted the grounds on which the city relied in passing the ordinance and the city would not consider this time-of-challenge evidence. *Independence News*, 568 F.3d at 155.

The court rejected the adult businesses' argument. The court held that the city did not have to defend the general ordinance against an individual business's specific challenge based on postenactment evidence, giving two rationales. First, the court held that the validity of an ordinance depends on the relationship it bears to the overall problem the city is seeking to correct, and not on the extent to which it furthers the city's interests in an individual case. *Independence News*, 568 F.3d at 158. Thus, that an individual adult business was not responsible for any secondary effects was irrelevant because adult businesses generically could cause the undesirable secondary effects that the ordinance sought to prevent. *Independence News*, 568 F.3d at 158. Second, the court held that what mattered was whether the city had a sufficient evidentiary basis for adopting the ordinance in the first place (and the adult businesses had conceded that there was such an evidentiary basis). *Independence News*, 568 F.3d at 156-57.

The County argues that the *Independence News* court's holding supports its time-of-enactment view, because the court specifically stated that there was no requirement that a local government consider postenactment data in answering a challenge to the validity of its zoning ordinance. This reading of *Independence News* does indeed support its position. However, the County's reading emphasizes what is useful to its case without paying attention to the actual point of the case.

In *Independence News* the adult businesses challenged the ordinance as of its inception by using postenactment data to refute the legislative reasoning behind the enactment. The court disallowed this approach by saying that an individual's actual experience was irrelevant to the appropriateness of the legislative identification of a problem and a means to correct the problem for the entire polity. *Independence News*, 568 F.3d at 156. This distinguishes *Independence News* because, in our case, the adult businesses are not saying that the ordinance is unconstitutional because it was wrongly enacted (that the actual experience does not support the legislative rationale used to

justify the enactment of the ordinance). Instead, the adult businesses are concerned about whether the ordinance provides sufficient sites for adult expression. The issue of when to determine the availability of sites does not overlap the reasons why the ordinance was passed. The point of this case (as of what time do we determine the availability of sites) need not be particularly influenced by the point of *Independence News* (that the validity of an ordinance cannot be undermined if actual experience does not bear out the reason for its enactment).

We also note that the *Independence News* decision does not use any of the verbiage (or concepts) used by the County in its argument supporting the applicability of *Independence News*. The County expresses concern regarding the obligation of a zoning jurisdiction to repeatedly defend the constitutionality of its zoning regime and the harms that arise from repeated challenges. No such similar concerns are expressed in *Independence News*.

On the other hand, we note that the County's contention is not inherently implausible, and it is not too great a stretch to apply to the circumstances of this case the express sentiment in *Independence News*, that a local government need not consider postenactment data when answering a challenge to the validity of its zoning ordinance. There is a problem with this view, however. The County's view of *Independence News* effectively converts the *Renton* analysis from a two-part inquiry ((1) was the ordinance designed to serve a substantial government interest and (2) are there sufficient sites for adult businesses) into the singular inquiry of whether an ordinance was constitutional at its inception. This seems to be a much more mechanical inquiry, because all a local government need do is recite that the ordinance is combating secondary effects and then make sure that it does not decrease the number of viable sites for adult businesses from the previous zoning regime. The issue decided in *Independence News*, that actual experience does not defeat the underpinnings of an ordinance, does not also encompass the issue of how changes in the number of available sites over time affects the continued validity of an ordinance. Thus, rejecting the County's interpretation of *Independence News* allows us to keep to the two-part *Renton* inquiry. Further, based on these considerations, we find that *Independence News* is properly distinguishable and neither controls the outcome here nor undermines our view of *David Vincent* and the other cases analyzed above.

### III. CONCLUSION

For the foregoing reasons, we reverse the judgments of the circuit

court of Du Page County and remand the causes for further proceedings consistent with this opinion.

Reversed and remanded.

ZENOFF, P.J., and BURKE, J., concur.